**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 95-5387

ADRIAN MAURICE HUDGINS,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Samuel G. Wilson, District Judge.
(CR-94-133-R)

Argued: April 10, 1997

Decided: August 5, 1997

Before RUSSELL and LUTTIG, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by published opinion. Senior Judge Phillips wrote the opin-
ion, in which Judge Russell and Judge Luttig joined.

_____

**COUNSEL**

**ARGUED:** Wayne D. Inge, Roanoke, Virginia, for Appellant.
Thomas Ernest Booth, UNITED STATES DEPARTMENT OF JUS-
TICE, Washington, D.C., for Appellee. **ON BRIEF:** Robert P.
Crouch, Jr., United States Attorney, Thomas J. Bondurant, Assistant
United States Attorney, UNITED STATES DEPARTMENT OF JUS-
TICE, Washington, D.C., for Appellee.

_____

**OPINION**

PHILLIPS, Senior Circuit Judge:

Adrian Maurice Hudgins appeals his convictions on two counts of using or carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). Hudgins claims that the evidence was insufficient to sustain the convictions and, alternatively, that the district court's erroneous "use" instruction requires vacatur of the convictions and remand for a new trial.[1] We find no error requiring reversal and affirm the convictions on both counts.

I.

On November 21, 1994, Lorenzo Banks, an informant, working in cooperation with the Roanoke County Police, was stationed in a motel room that was equipped with listening devices. Detective Warner, a police officer, was stationed in a parking lot adjoining the motel property. Warner observed Hudgins enter the motel room. Banks testified that on that occasion Hudgins sold him 0.9 grams of cocaine and that during the transaction he observed "the butt of a black nine millimeter pistol" in the waistband of Hudgins' pants.

On November 23, 1994, a second controlled buy took place at the same motel as did the first. On that date, Warner was in the motel room with Banks when Hudgins entered and made a sale of 0.8 grams of cocaine to Banks. Warner testified that on that occasion he saw on Hudgins "a black clip which appeared to be a clip of an enhanced holster and a bulge underneath his--he was wearing like a pullover fitted sweater." He elaborated that the object he saw was an "Uncle Mike's in-pants holster. It is where the holster goes inside the pants and the clip goes on the outside of the belt and usually it is black in color and

_____

[1] Hudgins' further contention that because the sentencing guidelines treat defendants convicted of drug offenses involving crack more harshly than those convicted of offenses involving powder cocaine they deny him equal protection under the Fourteenth Amendment is foreclosed by United States v. Thomas, 900 F.2d 37, 39-40 (4th Cir. 1990) (rejecting same constitutional argument).

2

that keeps the gun from sliding down into your pants so you can get access to it."

Hudgins was indicted on one count of conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846, two counts of distribution of crack cocaine in violation of 21 U.S.C.§ 841(a)(1), two counts, Four (the November 21 transaction) and Five (the November 23 transaction) of using or carrying a firearm in relation to a drug offense in violation of 18 U.S.C. § 924(c), and three counts of possession of a firearm after having been convicted of a felony in violation of 18 U.S.C. § 922(g)(1).

In submitting the "use or carry" counts (Four and Five) to the jury, the district court instructed that:

> The Defendant Hudgins is also charged in Counts Four and Five with knowingly using or carrying a firearm during and in relation to a drug trafficking crime on or about November 21, and November 23, 1994, respectively.
>
> For you to find the Defendant guilty of this crime you must be convinced that the Government has proved the following elements beyond a reasonable doubt: 1, that the Defendant knowingly used or carried a firearm, and, 2, that the Defendant knowingly used or carried a firearm during and in relation to the Defendant's commission of a drug trafficking crime.
>
> If the Government fails to prove each of these essential elements beyond a reasonable doubt you must find the Defendant not guilty as to any Count in which they fail to meet that proof.
>
> The Government is not required to prove that the Defendant actually fired the weapon or brandished it at someone in order to prove use as that term is used in these instructions. A firearm can be used in relation to a crime involving drug trafficking if a person possessing it intended to use the firearm if a contingency arose, for example, protect them-

3

selves and make an escape possible, however, you must be convinced beyond a reasonable doubt that the firearm played a role in or facilitated in the commission of the drug offense. (Supplemental J.A. at 1-2)

Following his conviction on all counts, Hudgins took this appeal. In his original brief, he challenged only his conviction on Count Four which charged his "use or carry" of a firearm in relation to the November 21 transaction. Following the filing of original briefs, the Supreme Court issued its decision in Bailey v. United States, 116 S. Ct. 501 (1995), and we requested the parties to file supplemental briefs addressing that decision's impact on this appeal. In his supplemental brief, Hudgins now contends that (1) his conviction on both "use and carry" counts, Four and Five, must be reversed for insufficiency of evidence to convict under Bailey's interpretation of the meaning of "use" in § 924(c) and, alternatively, that his conviction on both § 924(c) counts must be vacated and a new trial ordered because of erroneous jury instructions in light of Bailey.

We take these in turn.

II.

The standard for assessing the sufficiency of the evidence to convict is whether, viewing it in the light most favorable to the Government, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Hudgins contends that under this standard the evidence was insufficient to prove beyond a reasonable doubt that he either "carried" or "used" a firearm on either the Count Four or Count Five occasions. Under Bailey's now controlling definition of the "use" element, there must be proof of some form of "active employment" of a firearm in relation to the drug trafficking offense; mere possession without more, will not suffice. See Bailey, 116 S. Ct. at 508. Here, Hudgins points out, and the Government concedes, there was no evidence of "active employment" as by "brandishing" or otherwise using a firearm. Nor, says Hudgins, was there sufficient evidence that on either occasion he even "carried" a firearm in the statutorily required sense.

4

Conceding that in dicta the Bailey Court indicated that a defendant who "keeps a gun hidden in his clothing throughout a drug transaction" would thereby "carry" it for § 924(c) purposes, id. at 507, Hudgins argues that the proof was insufficient to support a finding that he did even this.

As indicated, the Government concedes, as it must, that the evidence was insufficient under Bailey to prove "use," on either occasion. But, the Government contends, and we agree, that the evidence clearly sufficed to prove "carrying" under Bailey's suggestion of hidden actual possession on one's person during a drug transaction. See also United States v. Mitchell, 104 F.3d 649, 653 (4th Cir. 1997) (holding, citing Bailey, that "actually possessing a firearm . . . on his person--either in his hand, his clothing, or in a satchel he is holding --during a drug transaction is perhaps the clearest example of a violation of the `carry' prong of § 924(c)(1)"). Though Warner's testimony as to Hudgins carrying a firearm during the November 23 transaction only identified a pistol holster on Hudgins' person as being exposed to his actual view, it nevertheless sufficed, in conjunction with the evidence of a connected bulge under the clothing, to support a finding that the holster contained its intended object, a pistol. As to the November 21 transaction during which, per Banks' flat testimony, he saw a pistol butt in Hudgins' pants waistband, the evidence clearly sufficed to support conviction under the "carry" prong of § 924(c).

Considering then only whether there was sufficient evidence to support findings of guilt on both Counts Four and Five, we conclude that there was--under the "carry" prong of § 924(c).

That leaves the question--to which we now turn--whether conceded error in the court's "use" instruction nevertheless requires remand for a new trial.

III.

Hudgins contends that the erroneous "use" instruction requires vacatur of his convictions on the two § 924(c) counts and a remand for new trial on each. Specifically, he invokes the Supreme Court's decisions in Yates v. United States, 354 U.S. 287 (1957), and Griffin v. United States, 502 U.S. 46 (1991), which, he says, in combination

5

establish that where any one of multiple grounds for conviction submitted to a jury is "legally inadequate," a resulting general verdict of guilty must be set aside if it is impossible to tell whether it may have been based solely on the legally inadequate ground. That, he contends, is the case here, for even if it be assumed that the "carry" ground, as submitted, was both legally adequate and factually supported, it is impossible to tell whether the jury nevertheless convicted solely on the legally inadequate and factually unsupported "use" ground. We disagree--for several reasons.

Hudgins is right on the basic proposition that Yates and Griffin do, in combination, affirm the longstanding federal rule (at odds with that of the common law) that where multiple alternative grounds for conviction are submitted to a jury, a resulting general verdict of guilty must be set aside if it is "impossible to tell" whether it may have been based solely upon an unconstitutional or "legally inadequate" ground among those submitted. See Griffin, 502 U.S. at 56 (announcing "continued adherence" to that rule as properly applied in Yates where one of two grounds submitted in a conspiracy prosecution was time-barred, hence "legally inadequate"). In confirming that rule's continued vitality, however, Griffin distinguished, and refused to apply it to the situation where one or more of alternative grounds for conviction, though neither unconstitutional nor "legally inadequate," was unsupported by sufficient evidence. In that situation, Griffin held that if any one of the other grounds submitted was supported by sufficient evidence, the general verdict might stand without further inquiry into its actual basis. Id. at 56-60 (relying on earlier holding to same effect in Turner v. United States, 396 U.S. 398, 420 (1970)).

Hudgins' invocation of the Yates/Turner /Griffin rule might, therefore, turn initially upon whether the "deficiency" or "inadequacy" he identifies in the district court's submission of the"use" ground was "legal" or "factual" in the sense critical to Griffin's distinction. If he were relying only upon the conceded insufficiency of the evidence to support conviction on that ground, he would lose under Griffin because of our earlier holding that there was sufficient evidence to convict on the "carry" ground. But, as he points out, though he does of course rely to some extent on the insufficiency of "use" evidence, his invocation of the Yates "legal inadequacy" rule is based upon the district court's erroneous jury instruction on that ground. And, he

6

says, a jury instruction which misinstructs on an essential element of an offense submits a "legally inadequate" ground, which then invokes Yates' rather than Griffin's rule respecting the validity of the resulting verdict.

We need not decide whether such an erroneous jury instruction does result in submission of a "legally inadequate" ground so as to invoke Yates' rule.**2** Even assuming that it does, Hudgins loses. For integral to the rule's application is the requirement that "it is impossible to tell which ground the jury selected," Yates, 354 U.S. 298, 312 (1957), so that "for all we know," the verdict "may have been rendered on that [illegal] ground alone. Williams v. North Carolina, 317 U.S. 287, 292 (1942) (applying rule where one of grounds submitted was unconstitutional) (emphasis added). The necessary uncertainty is not present here. It is clear from the record that the jury necessarily found the elements constituting a "carry," whether or not it also found "use" under the erroneous pre-Bailey instruction.

As suggested in Bailey, and specifically held by this court in Mitchell, "carrying" under § 924(c) can be found from evidence that a defendant (1) actually possessed (2) on his person, (3) a firearm, (4) during and in relation to a drug transaction. Bailey, 116 S. Ct. at 507; Mitchell, 104 F.3d at 653. Here, as indicated, there was evidence, in the form of eye-witness testimony, that Hudgins did actually possess pistols, hidden in clothing on his person during both of the

_____

**2** This is, so far as we are aware, an open question whose practical importance was only brought out by Griffin's critical distinction between legally inadequate and factually insufficient grounds for a conviction. None of the Yates line of "legally inadequate" (or unconstitutional) ground cases involved misinstructions on an otherwise legal ground of conviction. None, therefore, addressed whether such a misinstruction made the ground submitted "legally inadequate" in the Griffin sense. There are, however, some intimations in Griffin 's rationale for the distinction that could be thought to point in that direction. The distinction was said in Griffin to make "good sense" because lay juries can be presumed to have rejected factually unsupported grounds, but not legally inadequate ones such as, e.g., one that "fails to come within the statutory definition of the crime." Griffin, 502 U.S. at 59.

As indicated, we need not attempt to resolve that question here.

7

transactions in issue. The jury was instructed, without elaboration as to what "carry" meant, that he might be convicted if the jury found that he "knowingly carried a firearm during and in relation to Defendant's commission of a drug trafficking crime." Hudgins' defense at trial was simply a denial of the most critical "carry" element: actual possession. There was no contention that such possession as occurred was not during or in relation to a drug trafficking offense, nor that his possession was not knowing, nor that it was only"constructive." In finding him guilty, the jury therefore necessarily found, on sufficient evidence, that he did actually possess a firearm at the time and in the manner testified. It therefore necessarily found further that, under § 924(c) he then and there "carried" a firearm. We are not, therefore, left in doubt as to whether it may only have found him guilty on the basis of a merely constructive possession use of the pistols under the district court's erroneous "use" instruction. The Yates rule does not therefore require that the conviction be set aside. **3** See United States

_____

**3** The same result might be reached, and has been reached by some courts in generally comparable Bailey-spawned situations, by employing the more tortured Rule 52(b) plain error analytic route prescribed by United States v. Olano, 507 U.S. 725 (1993). See, e.g., United States v. Ramirez-Ferrer, 82 F.3d 1149, 1151, 1154 (1st Cir. 1996) (finding no "miscarriage of justice" because, though erroneous "use" instruction was "plain," evidence "was sufficient . . .[to convict] under an ordinary and natural meaning of the word `carry'"); United States v. Baker, 78 F.3d 1241, 1247-48 (7th Cir. 1996) (holding an erroneous use instruction was not "plain" because "the only believable evidence" indicated that the defendant had "carried" a firearm).

Such an approach focussing on the "use" misinstructional error and running it through Olano's four-step sequential analysis, fails to take into account the more direct route that is prescribed by the established Yates/Griffin rule for dealing with the long-recognized special problem of the "good ground/bad ground" general verdict. That rule serves the same function, but more directly, because it contains, in effect, a built-in "harmlessness" sub-rule that requires reversal only where it is "impossible to tell" that the bad ground was not the sole basis for the verdict. In this case where the Government prudently relies upon both the Olano route and Yates' impossible-to-tell route to ultimate "harmlessness", we apply the Yates analysis as that prescribed by precedent for this particular situation, and as the more serviceable.

8

v. Washington, 106 F.3d 983, 1013 (D.C. Cir. 1997) (holding to same effect, applying Yates impossible-to-tell analysis).

AFFIRMED

9