**UNITED STATES of America, Appellee,**

v.

**Daniel Joseph PERKINS, Appellant.**

No. 96–3138.

United States Court of Appeals, District of Columbia Circuit.

Argued May 11, 1998.

Decided Nov. 24, 1998.

**68**

Evelina J. Norwinski, Assistant Federal Public Defender, argued the cause for appellant. A. J. Kramer, Federal Public Defender, was on the briefs.

T. Anthony Quinn, Assistant U.S. Attorney, argued the cause for appellee. Wilma A. Lewis, U.S. Attorney, John R. Fisher and Thomas J. Tourish, Jr., Assistant U.S. Attorneys, were on the brief. Elizabeth Trosman, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON, ROGERS and GARLAND, Circuit Judges.

GARLAND, Circuit Judge:

Daniel Joseph Perkins asks us to vacate his 1991 conviction for the use or carrying of a firearm during and in relation to a drug trafficking offense. He contends that the district court improperly instructed the jury with respect to the meaning of "use," as the Supreme Court subsequently defined the term in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Although Perkins did not object to the district court's instruction at the time, he contends that the standard of review normally applied when an objection has been made, "harmless error" review, is the appropriate

standard for this case. We question whether harmless error is in fact the appropriate standard of review here. We need not resolve that question, however, because defendant's appeal fails even under the standard he asks us to apply.

**I**

While investigating gunshots in the vicinity of a building in the District of Columbia, police officers saw Perkins leave the building with a handgun protruding from his waistband. When an officer ordered Perkins to stop, he disregarded the order and ran, throwing a nine-millimeter handgun into the bushes. The gun was found where Perkins threw it. Two other officers apprehended and searched him. They found a fully loaded nine-millimeter ammunition clip, two large rocks of cocaine base, 154 ziplock bags of cocaine base, a razor blade, and $518 in cash—$120 of which was concealed in Perkins' underwear. The total street value of the cocaine base was more than $4,500.

The grand jury returned a two-count indictment. Count 1 charged Perkins with possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). Count 2 charged him with violating 18 U.S.C. § 924(c)(1), which imposes punishment on anyone who, during and in relation to a drug trafficking crime, "uses or carries" a firearm. At trial, Perkins admitted possessing the drugs; his defense to the § 841 charge was that he did not intend to distribute them. Perkins said "a boy named John" had asked him to hold the drugs about an hour or two before his arrest, and that he had planned to give the drugs back to John as soon as he returned to collect them. 2/4/91 Tr. at 142–43, 153.

Perkins also admitted carrying the gun. 2/4/91 Tr. at 158. His defense to the § 924(c)(1) charge was that although he carried the weapon, he did not do so "during and in relation to" a drug-trafficking offense. He said he carried the gun for protection from an unknown assailant who had shot at him two weeks earlier, and not in connection with the drugs he was holding. *Id.* at 114, 122. His counsel told the jury that "in effect,

it was a coincidence" that he had the gun and drugs on his person at the same time. 2/1/91 Tr. at 70–71 (opening statement). The jury convicted Perkins on both counts.

Perkins then appealed, contending that the district court improperly denied a motion to suppress the evidence seized from his person, and that there was insufficient evidence to sustain a conviction for using or carrying a firearm "during and in relation to" a drug trafficking offense. This court rejected Perkins' claims and affirmed his convictions on July 26, 1993. *United States v. Perkins*, 1 F.3d 45 (D.C.Cir.1993) (unpublished opinion available at 1993 WL 299119).

On December 6, 1995, the Supreme Court decided *Bailey v. United States*, in which it held that in order to establish "use" of a firearm under § 924(c)(1), the government must show "active employment of the firearm" by the defendant. 516 U.S. at 144, 116 S.Ct. 501.[1] Perkins then filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Perkins contended that the jury instructions at his trial were improper because they did not limit "use" to mean only active employment, and because the court implied that the jury could find "use" merely by finding that Perkins possessed the gun to advance or facilitate a drug trafficking offense. The district court denied Perkins' § 2255 motion, holding that the instructions were proper. *See United States v. Perkins*, 939 F.Supp. 42, 44 (D.D.C. 1996). Defendant appeals the denial of his motion.[2]

## II

■ We first consider whether there was error in the district court's instructions as to the elements of § 924(c)(1). This is a question of law which we review de novo. *See*

*Joy v. Bell Helicopter Textron*, 999 F.2d 549, 556 (D.C.Cir.1993).

The court instructed the jury that:

[T]o establish the offense charged in Count 2 [§ 924(c)(1)], the government must prove beyond a reasonable doubt the following elements:

1. That the defendant committed a drug trafficking crime ... [;]

2. That the defendant used or carried a firearm knowingly and intentionally; and

3. That the firearm was used or carried during and in relation to a drug trafficking offense.

2/5/91 Tr. at 25. With respect to the first element, the court explained that the drug trafficking crime at issue was the possession with intent to distribute charge that was the subject of Count 1. *Id.* With respect to the "knowingly and intentionally" aspect of the second element, the district court, at defendant's request, gave the standard charge that "an act is done knowingly and intentionally if done consciously, voluntarily and purposely, and not by mistake, inadvertence or accident." *Id.* at 26.

The court did not define either "use" or "carry." It did, however, define "in relation to" as follows:

Now we get to the third element.... The use or carrying of a firearm relates to a drug trafficking offense if it advances or facilitates the commission of a drug trafficking offense. The carrying of a firearm does not relate to a drug trafficking offense if the defendant inadvertently used or carried the firearm.

2/5/91 Tr. at 26–27. The defendant did not object to the instructions.

---

1. Justice O'Connor explained that "active employment" includes "brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire a firearm." *Id.* at 148, 116 S.Ct. 501. It does not include merely "storing a weapon near drugs or drug proceeds" or "conceal[ing] a gun nearby to be at the ready for an imminent confrontation." *Id.* at 149, 116 S.Ct. 501.

2. After the appeal was filed, the government moved to dismiss based on the defendant's fail-

ure to obtain a certificate of appealability, as required by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2253(c) ("AEDPA"). In light of the Supreme Court's opinion in *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 2067, 138 L.Ed.2d 481 (1997), this court denied the motion to dismiss because Perkins filed his § 2255 motion before Congress enacted AEDPA. *United States v. Perkins*, No. 96–3138 (Sept. 26, 1997).

Perkins now contends that the failure to define "use" or "carry," combined with the above definition of "in relation to," led the jury to believe that "use" could include any advancing or facilitating of a drug offense, even if there were no active employment of the firearm as required by *Bailey*. Although we will assume for purposes of analysis that the jury instructions were erroneous as defendant contends, for the following reasons we are not at all certain that they were.

■ First, there was no error in the definition of "in relation to." It was drawn largely from an instruction avidly sought by defendant as the basis for his only defense to the § 924(c) charge. *See* Defendant's Proposed Jury Instructions Regarding 18 U.S.C. § 924(c)(1) (filed Jan. 31, 1991). Moreover, it was very close to the wording employed by the Supreme Court in *Smith v. United States*, 508 U.S. 223, 237–38, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993), and by this court in *United States v. Washington*, 106 F.3d 983, 1010 (D.C.Cir.1997). Nor was there any implication that the trial court was, by those words, defining "use" rather than "in relation to." The court clearly prefaced its remarks by saying that it was about to define the third element of the offense, which it had just moments before explained was the requirement that the using or carrying be "in relation to" a drug trafficking offense.

■ There also was no error in the court's failure to define "carry." *See United States v. Freisinger*, 937 F.2d 383, 387 (8th Cir.1991). Although a trial court must define words and phrases that have technical or unconventional meanings, it is not required "to define words which are in common use, and are such as are readily comprehended by persons of ordinary intelligence, where the words are applied in the judge's instructions in their conventional sense." *United States v. Maude*, 481 F.2d 1062, 1075 (D.C.Cir. 1973); *see also United States v. DeSantiago–Flores*, 107 F.3d 1472, 1480 (10th Cir.1997). In *Muscarello v. United States*, the Supreme Court determined that Congress intended "carry" to have its "ordinary" and "generally accepted contemporary meaning," 118 S.Ct. 1911, 1916, 1919 (1998), which, the Court said, includes both carrying a firearm on

one's person and knowingly possessing and conveying a firearm in a vehicle—even in the vehicle's locked glove compartment or trunk, *id.* at 1913–14. Given that broad definition of the word, it is implausible that the jury could have adopted a still broader interpretation that was impermissible under the statute.

Moreover, in this case there was no reason for jurors to scratch their heads over the definition of "carry." The only evidence of carrying in the case was the most "ordinary" of the ordinary possibilities noted in *Muscarello*: Perkins had the gun on his person. More important, defense counsel told the jurors in his opening statement that "Mr. Perkins will tell you that he carried the gun, and that's not going to be an issue." 2/1/91 Tr. at 70. Perkins did indeed testify that he carried the gun. 2/4/91 Tr. at 121–22, 158. The failure to define a term that is both conceded by the defendant and commonly used can hardly be error. *See Maude*, 481 F.2d at 1075 & n. 98.

The trial court's failure to define "use," however, is more problematic. On the one hand, there are reasonable arguments for concluding that such a failure may constitute error in the usual case. Although the *Bailey* Court said it was giving "use" its "ordinary and natural" meaning when it defined the term as "active employment," 516 U.S. at 145, 148, 116 S.Ct. 1035, it acknowledged that the meaning of "use" had been "the source of much perplexity in the courts" and that many, including this court, had given the word a much broader meaning. *Id.* at 142, 116 S.Ct. 1035 (collecting cases); *see United States v. Bailey*, 36 F.3d 106, 115 (D.C.Cir. 1994) (en banc) ("[O]ne uses a gun ... whenever one puts or keeps the gun in a particular place from which one ... can gain access to it if and when needed to facilitate a drug crime."), *rev'd*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). If so many judges could define the word erroneously in the absence of Supreme Court guidance, it is not unreasonable to suggest that jurors might do the same in the absence of trial court instruction. Moreover, the Court itself later noted that *Bailey* had· construed the term "use" narrowly, in contrast with the broad reading

given to "carry" in *Muscarello*. *Muscarello*, 118 S.Ct. at 1918. While a jury's failure to give a term its appropriately broad meaning will not affect a defendant whose conduct falls within a narrower one, a jury's failure to restrict a term to its appropriately narrow meaning may well have an important impact on a jury's deliberations.

On the other hand, this was not the usual case. Here, "use" was not at issue. Although the court did instruct the jury that it could convict Perkins for use or carrying, neither the prosecutor nor the defense counsel suggested that the case involved "use" of the firearm; both told the jury that the issue in the case was whether defendant carried the firearm in relation to a drug trafficking offense. 2/1/91 Tr. at 67, 70–71. Under these circumstances, whether the court erred by failing to define "use" is a more difficult question. However, it is a question we need not resolve today because, as we conclude below, even if the jury instructions were erroneous they did not prejudice the defendant.

### III

■ Assuming for purposes of analysis that the district court's instructions were erroneous with respect to the "use" element of § 924(c)(1), the next issue is the appropriate standard for reviewing such an error[3]—or,

more precisely, the appropriate standard for determining whether we have authority to correct the error. *See United States v. Olano*, 507 U.S. 725, 727, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). Here, defendant asserts instructional error for the first time in a motion under § 2255, having failed to object either at trial or on direct appeal. Ordinarily, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, —— U.S. ——, ——, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998) (citations omitted). In this case, however, the government itself might be said to have "procedurally defaulted," as it failed to raise the issue of Perkins' procedural default below and hence deprived the district court of an opportunity to determine whether the § 2255 criteria were met. Recognizing this failure, the government does not press us to review this case other than as if it were on direct appeal. *See* Gov't Br. at 11 n.5. Whether or not we nonetheless may apply the § 2255 criteria as a matter of our own discretion,[4] we decline to do so here because defendant is unable to show that his conviction should be reversed even on the more lenient standards applicable to claims raised on direct review.[5]

3. There is no question in this case that the evidence was sufficient to sustain Perkins' conviction. Although the government does not contend there was sufficient evidence to convict Perkins on a "use" theory, "evidence that fails to show 'use' may nonetheless support a conviction for 'carrying.'" *In re Sealed Case 96–3167*, 153 F.3d 759, 771 (D.C.Cir.1998) (citing *Bailey*, 516 U.S. at 146, 116 S.Ct. 501). Perkins does not dispute there was sufficient evidence to convict him on a "carrying" theory: He admitted he carried the gun; he does not contest the validity of his conviction on the drug trafficking offense in Count 1; and this court previously held on direct appeal that the evidence was sufficient to sustain the "during and in relation to" element of the offense. *Perkins*, 1993 WL 299119 at *3.

4. In *Trest v. Cain*, a case involving a petition for a writ of habeas corpus to vacate a state sentence for armed robbery, the Supreme Court noted that "procedural default is normally a 'defense' that the state is 'obligated to raise' and 'preserv[e]' if it is not to 'lose the right to assert the defense thereafter.'" 522 U.S. 87, 118 S.Ct. 478, 480,

139 L.Ed.2d 444 (1997) (quoting *Gray v. Netherland*, 518 U.S. 152, 116 S.Ct. 2074, 2082, 135 L.Ed.2d 457 (1996)). The Court held that a federal court of appeals is not *required* to raise the issue of procedural default sua sponte where the state has failed to do so (even at the appellate level), but expressly declined to decide whether the law *permitted* a court of appeals to consider a procedural default the state waived or failed to raise. *Id.* But see *Boyd v. Thompson*, 147 F.3d 1124, 1128 (9th Cir.1998) ("Every circuit to consider the issue holds that a habeas court has discretion to raise procedural default sua sponte....").

5. *See United States v. Saro*, 24 F.3d 283, 287 (D.C.Cir.1994) ("The Supreme Court has declared that the showing of 'prejudice' necessary under the 'cause and prejudice' standard of *habeas* law 'is significantly greater' than that necessary under the plain-error doctrine.") (quoting *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *see also Olano*, 507 U.S. at 734, 113 S.Ct. 1770 (noting that both the "harmless error" and "plain error" stan-

■ In order to determine the appropriate standard of review applicable to direct appeal of erroneous jury instructions, we turn to Federal Rule of Criminal Procedure 52. That Rule identifies two possible standards. Under Rule 52(a), we apply "harmless error" review when there has been a timely objection below. Rule 52(b), however, requires us to apply "plain error" review when an objection has been forfeited because it was not asserted below. *See Olano*, 507 U.S. at 731–33, 113 S.Ct. 1770.

■ Harmless error is the standard more favorable to a defendant. To justify reversal of a conviction under that standard, there must be (1) error, (2) that "affect[s] substantial rights"—i.e., that is prejudicial. Fed.R.Crim.P. 52(a); *see Olano*, 507 U.S. at 731, 734, 113 S.Ct. 1770. To meet the plain error standard, both of these requirements must be satisfied[6] and the error must also be "plain." Fed.R.Crim.P. 52(b); *see Olano*, 507 U.S. at 734, 113 S.Ct. 1770. Even then, although a court of appeals has discretion to correct an error, there is a fourth consideration: "[T]he court should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *Olano*, 507 U.S. at 732, 113 S.Ct. 1770 (citations omitted). And, critical to our analysis here, the Supreme Court has indicated that it is "not likely an error can have that effect where the evidence against the defendant is 'overwhelming.' " *United States v. Gartmon*, 146 F.3d 1015, 1024 (D.C.Cir.1998) (citing *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 1550, 137 L.Ed.2d 718 (1997)).

Because Perkins did not object to the district court's jury instructions at trial, his claim of error would ordinarily be reviewed under the plain error standard. He correctly points out, however, that this circuit has applied harmless error review to post-*Bailey* claims of instructional error even when defendants did not raise them at their pre-*Bailey* trials. *See, e.g., United States v. Toms*, 136 F.3d 176, 180–81 (D.C.Cir.1998); *United States v. Smart*, 98 F.3d 1379, 1393 (D.C.Cir.1996); *see also United States v. Hudgins*, 120 F.3d 483, 486–88 n. 3 (4th Cir.1997). In those cases, we have relied on the circuit's "supervening-decision doctrine," which permits appellate review as if an objection had been made below when prevailing circuit law at the time of the trial would have made such an objection futile. *See Toms*, 136 F.3d at 180 & n. 5; *Smart*, 98 F.3d at 1393; *United States v. Lin*, 101 F.3d 760, 771 (D.C.Cir.1996). Thus in *Toms*, where the trial court instructed the jury without objection that the "government need not show the defendant actively employed the firearm" to establish "use," we applied harmless error analysis because at the time of the trial the instruction was consistent with "prevailing law in this circuit." *Toms*, 136 F.3d at 180 (citing *United States v. Bailey*, 36 F.3d 106 (D.C.Cir.1994)).[7]

The Supreme Court's decision last year in *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), however, casts doubt on whether harmless error and the supervening-decision doctrine remain the appropriate rubrics for analyzing forfeited *Bailey* claims.[8] *Johnson* involved a prosecu-

dards of review normally require the same kind of inquiry with respect to "whether [an] error was prejudicial").

6. In addition, in contrast to harmless error review, on plain error "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Olano*, 507 U.S. at 734, 113 S.Ct. 1770.

7. It might be argued that the supervening-decision doctrine does not apply to this case, since if there were an error here, it was not the giving of an incorrect definition of "use," but rather the failure to give any definition at all—an issue the supervening decision in *Bailey* did not address. But, if there were an error here, it was one that

was not made manifest until *Bailey* narrowed the definition of "use," creating the possibility that without judicial guidance a jury might convict a defendant on a broader than lawful definition of the term.

8. With the exception of *Toms*, all of our cases applying the harmless error standard to forfeited *Bailey* errors were decided before *Johnson*. In *Toms*, we found it unnecessary to decide whether *Johnson* changed the landscape because the defendant's conviction survived even harmless error review. *See Toms*, 136 F.3d at 180 n. 6. We also applied harmless error analysis in *United States v. Kennedy*, 133 F.3d 53, 58 (D.C.Cir. 1998), but the opinion does not indicate whether there was an objection at trial.

tion for perjury. The trial judge, following the then-settled law, instructed the jury that the element of materiality was a question for the judge to decide and that he had determined the statements at issue were material. The defendant did not object. After Johnson's conviction but before her appeal, the Supreme Court decided *United States v. Gaudin,* 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), holding that the materiality of a false statement must be decided by the jury rather than the judge. *See Johnson,* 117 S.Ct. at 1547.

The *Johnson* Court did not consider applying harmless error review or the supervening-decision doctrine. Instead, it held that because Johnson had not objected to the trial judge's failure to submit materiality to the jury, plain error was the appropriate standard. *Id.* at 1547–49. The Court did not ignore the fact that objection at the time would have been useless. That, the Court said, was good reason for evaluating the plainness of the error from the vantage point of the time of appellate consideration rather than trial. *Id.* at 1549. Applying that rule, the Court concluded that the trial court's *Gaudin* error was plain.

The next question normally would have been whether the defendant was prejudiced by the failure to submit materiality to the jury. But because it applied a plain rather than harmless error standard, the Court held that it did not need to decide the prejudice question. Even if the defendant had been prejudiced, the Court said, the "overwhelming" evidence of materiality meant that Johnson could not satisfy the fourth element of the plain error standard. *Id.* at 1550.

Were we to apply plain error analysis here, it would significantly affect the way in which we analyze Perkins' appeal. Ordinarily, in cases in which the jury has been offered two possible grounds for conviction, one of which is legally inadequate, we examine the prejudicial effect of an error according to the test set forth in *Yates v. United States:* "[A] verdict [must be] set aside in cases where the verdict is supportable on one ground, but not another, and it is impossible to tell which ground the jury selected." 354 U.S. 298, 312, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); *see Griffin v. United States,* 502 U.S. 46, 59, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) (limiting *Yates* test to cases in which one of the grounds is legally, not merely factually, inadequate). We have repeatedly used the *Yates* test to analyze the prejudicial effect of forfeited *Bailey* error. *See Toms,* 136 F.3d at 181; *United States v. Washington,* 106 F.3d 983, 1013 (D.C.Cir.1997). But if plain error review were the required standard for a forfeited *Bailey* error, we would be required to sustain a § 924(c)(1) conviction when there is overwhelming evidence of carrying, even if it were impossible to tell whether the jury found "carrying" or only "use." Given the overwhelming evidence of carrying in this case, including Perkins' own in court admissions, such an approach would end this appeal without further analysis.[9]

There is good reason to conclude that plain error review is as appropriate for forfeited *Bailey* error as it is for forfeited *Gaudin* error. Both involve objections that would have been futile under then-prevailing law.[10] And in both situations the concern is whether the jury properly found an element of the offense. In the *Bailey* context it may be

9. In *Johnson,* the Court found the evidence of materiality "overwhelming" because materiality was "essentially uncontroverted" at trial. 117 S.Ct. at 1550. The same is true here with respect to "carrying," except that we can dispense with the qualifier "essentially."

10. The Supreme Court's recent decision in *Bousley* casts some doubt on whether we should continue to regard *Bailey*-type objections as having been "futile" before *Bailey* was decided. In *Bousley,* the Court rejected—for purposes of establishing "cause" for a procedural default under § 2255—the suggestion that an argument for a narrow definition of use "was not reasonably

available" to trial counsel pre-*Bailey,* because even then "the Federal Reporters were replete with cases" involving challenges to a broad definition. 118 S.Ct. at 1611. Nor would the Court accept the argument that default should be excused because, before *Bailey,* such a challenge would have been futile. "Futility," the Court said, "cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" *Id.* at 1611 (citations omitted). If this analysis were applied to cases on direct review, the supervening-decision doctrine (even if still generally applicable) would not apply to *Bailey* errors at all.

"impossible to tell" whether the jury found "carrying" rather than improperly found "use." But in the *Gaudin* context the concern is not even speculative; the reviewing court can be virtually certain the jurors did not find materiality since they were never instructed to look for it. Because *Johnson* makes clear that plain error review is the appropriate standard even in that context, it would appear a fortiori that it is appropriate in the *Bailey* context as well. *See United States v. Hastings,* 134 F.3d 235, 239–40 (4th Cir.1998) (applying plain error review to forfeited *Bailey* error); *United States v. McKinney,* 120 F.3d 132, 133 (8th Cir.1997) (same).

■ Once again, however, we need not resolve whether plain or harmless error is the appropriate standard for reviewing forfeited *Bailey* claims in order to decide this case. As we indicate below, Perkins' appeal fails even if we employ harmless error review. Accordingly, we reserve for another day the question of which standard is the more appropriate. *See Toms,* 136 F.3d at 180 n. 6 (finding it unnecessary to determine whether plain or harmless error was the appropriate standard since conviction survived even harmless error analysis).

### IV

■ Assuming without deciding, then, that harmless error remains the appropriate standard for reviewing Perkins' challenge, we now proceed to analyze it under our precedents employing the *Yates* test to determine whether a *Bailey* error is prejudicial. *United States v. Washington,* 106 F.3d 983 (D.C.Cir.1997), is the most directly on point. In that case, we affirmed defendants' convictions for violating § 924(c)(1), notwithstanding the district court's error in instructing the jury that "a defendant uses a firearm whenever he puts or keeps a gun in a particular place from which he . . . can gain access to it. . . ." 106 F.3d at 1013. Defendants were police officers who were caught in a sting operation in which they escorted and protected purported drug couriers. The officers admitted they carried their service pistols during the drug runs, but contended they did so because police regulations required them to carry their weapons at all times, and not "in relation to" the drug trafficking. *Id.*

*Washington* first rejected the claim that there was insufficient evidence to establish the "in relation to" element. *Id.* at 1010. We then noted that "the only evidence in support of the firearms convictions showed that the officers wore their service pistols on their persons during the drug trafficking offenses; there was no evidence suggesting that the officers merely 'possessed,' without carrying, the guns for protection or active use." *Id.* at 1013. We therefore concluded that "regardless of whether the jury actually convicted appellants under the 'use' or 'carry' prong, it is clear that the jury's reasoning included a finding that appellants . . . carried their guns." *Id.* Since the jury could not, "under these facts," have found "use" without also finding "carrying," we concluded that the convictions passed the *Yates* test and that the defendants were not prejudiced by the erroneous instruction. *Id.*

The case at bar passes the *Yates* test at least as readily as did *Washington.* Like the defendants in *Washington,* Perkins admitted carrying the weapon but defended on the ground that he did not do so "in relation to" drug trafficking. Like the *Washington* defendants, he also admitted he carried the gun during the entire relevant time period: He testified that he had the gun in his waistband from the moment "John" gave him the drugs until the moment the police arrested him. 2/4/91 Tr. at 158. And as in *Washington,* there was no evidence that Perkins "used" the gun in any way—active or otherwise— besides carrying it in his waistband. "Under these facts," *Washington,* 106 F.3d at 1013, the jury could not have found use without finding carrying, and hence the trial court's error, if there were one, was harmless. *See Toms,* 136 F.3d at 181; *Smart,* 98 F.3d at 1393–94; *see also Hudgins,* 120 F.3d at 487–88.

Defendant disputes the conclusion that the jury could not have found "use" without "carrying." In his opening brief, he argues that the jury might have believed that he took the gun from his home earlier in the day for his general protection, and that then, "forgetting

about the gun," he acquired the drugs. Def. Br. at 9–10. Under this scenario, Perkins contends, the jury might have found that his "conduct did not quite reach the 'intentionally carrying' level but that it did satisfy a lower standard, namely, that he generally 'used' (i.e., possessed) the gun to 'advance or facilitate' his drug trafficking." *Id.*

Perkins' "unintentional carrying" scenario has two fatal flaws. First, it ignores his own testimony that he knew he had the gun at the time he received the drugs. 2/4/91 Tr. at 156. Second, the court instructed the jury that defendant must have "used or carried a firearm knowingly and intentionally." 2/5/91 Tr. at 25. The court did not instruct that while the defendant had to carry the gun intentionally, he could be convicted if he unintentionally used it. Hence, if the jury had found that defendant forgot he had the gun, it could not have convicted him under either prong.

In his reply brief, Perkins offers another scenario in which the jury could have convicted him for using but not carrying the weapon. He contends the jury could have found that "he generally possessed (i.e., 'used') this gun to protect or embolden him while trafficking ... even though he may not have done so on the night of his arrest." Def. Reply Br. at 7–8. Perkins' theory, apparently, is that the jury could have found he trafficked in a different batch of drugs on an earlier date, when the gun was in his general possession (e.g., at home) but not in his waistband. *See id.* at 8 n. 4.

Once again, defendant's scenario is unsupported by any evidence at the trial. The only "drug trafficking offense" at issue in the case was the possession of the cocaine found on his person at the time he was arrested. There was no evidence that he possessed

drugs on any other day.[11] And defendant testified that he had the gun in his waistband the entire time he possessed the drugs. Hence, there was no evidence from which the jury could construct a drug trafficking scenario in which defendant used his gun other than by carrying it in his waistband.

Our cases have been careful to emphasize that it is the evidence before the jury that determines whether a conviction passes the *Yates* test—not just any hypothetical the defendant can conjure up. In *Washington,* for example, we stressed that "*the only evidence* in support of the firearms convictions showed that the officers wore their service pistols on their persons during the drug trafficking offenses; *there was no evidence* suggesting that the officers merely 'possessed' without carrying...." 106 F.3d at 1013 (emphasis added). Similarly, in *Smart* we stressed that the scenario offered by defense counsel must be plausible, not merely hypothetically possible. 98 F.3d at 1393–94. We rejected the scenario offered by defense counsel in that case—which speculated that the jury could have found "use" through constructive possession—as "too farfetched a possibility for any rational jury to base its verdict on *in light of the evidence offered at trial.*" *Id.* at 1394 n. 22 (emphasis added).

In sum, based on the facts in evidence at trial, the jury could not have found Perkins used the gun without also finding he carried it. Thus, any error the district court may have committed by failing to define "use" was harmless.[12]

## V

The appropriate standard for reviewing post-trial assertions of *Bailey* error is an

---

11. Defendant contends that the jury could have interpreted the testimony of the government's narcotics expert to suggest that Perkins regularly dealt in drugs. But that testimony did not refer to any course of conduct on the part of Perkins; the expert merely testified that the amount and packaging of the narcotics found on his person were consistent with distribution rather than personal use of those drugs. 2/4/91 Tr. at 79–82.

12. Defendant contends that we have reversed § 924(c)(1) convictions in three cases with facts similar to his. *See United States v. Moore,* 104

F.3d 377, 380 (D.C.Cir.1997); *United States v. Lin,* 101 F.3d 760, 771 (D.C.Cir.1996); *United States v. Morrison,* 98 F.3d 619, 628–29 (D.C.Cir. 1996). None of those cases is an apt comparison, because in none did the evidence establish that the defendant carried a gun on his person. Moreover, in two of the cases the government conceded that *Bailey* required reversal, making it unnecessary for the court to conduct a harmless error analysis at all. *See Moore,* 104 F.3d at 380; *Morrison,* 98 F.3d at 629.

issue as to which there remain a number of loose strands of legal doctrine. Unfortunately for Perkins, his appeal unravels regardless of which strand we pull. Applying the standard of review most favorable to defendant— harmless error—we find he suffered no prejudice and thus affirm the judgment of the district court.