**UNITED STATES of America,**
**Appellee,**

v.

**Rachel L. BREEDLOVE, Appellant.**

**No. 98–3135.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 14, 1999.

Decided March 7, 2000.

Lisa B. Wright, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was A. J. Kramer, Federal Public Defender. Maria Jankowski and Neil H. Jaffee, Assistant Federal Public Defenders, entered appearances.

Anne Y. Park, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief was Wilma A. Lewis, U.S. Attorney, John R. Fisher, Assistant U.S. Attorney, and Harry R. Benner, Assistant U.S. Attorney.

Before: SILBERMAN, GINSBURG and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

The appellant, Rachel Breedlove, was convicted of bank fraud. At trial the Government introduced evidence of her involvement in two prior fraudulent bank transactions, one of which involved a bank account held by William Cloud. Mr. Cloud's role in the scheme was not established, and the district court instructed the jury not to speculate about his identity or his role in the transaction. Ms. Breedlove claims the district court thereby prevented the jury from considering a fact that may have raised a reasonable doubt about her intent to commit the crime of which she was convicted. On this ground, Ms. Breedlove seeks a new trial. Alternatively, Ms. Breedlove seeks a remand for resentencing on the ground that the district court, when computing her sentence,

should not have considered the transaction involving Mr. Cloud. Finally, Ms. Breedlove asserts that she was sentenced to a period of supervised release in excess of the statutory maximum. We affirm Ms. Breedlove's conviction and remand this case solely so that the district court may impose a term of supervised release within the statutory maximum.

## I. Background

As a former Marine, Ms. Breedlove received monthly educational benefit checks from the Department of Veterans Affairs. Early in January 1998 she received in the mail a U.S. Treasury check payable to her in the amount of $58.65. At about the same time she opened a checking account at the First Union National Bank in Washington, D.C. Several days later she deposited into that account a U.S. Treasury check seemingly for $998,688.65. The teller assisting Ms. Breedlove suspected the check may have been altered, as did his supervisor.

In February 1998 Ms. Breedlove was indicted for aiding and abetting bank fraud, in violation of 18 U.S.C. §§ 1344 & 2, and for uttering a counterfeit obligation of the United States, in violation of 18 U.S.C. § 472. At trial, in order to establish Ms. Breedlove's specific intent to defraud First Union, the Government presented evidence of two prior and allegedly fraudulent bank transactions in which she had been involved. The first transaction occurred in August 1997, when Ms. Breedlove deposited to the account of Mr. William Cloud at the Navy Federal Credit Union a check in the amount of $1,206,000, drawn upon the Bank of America, and made payable to Mr. Cloud. Mr. Cloud had endorsed the check and an accompanying deposit slip was filled out before Ms. Breedlove approached the teller. The Credit Union soon determined the check had been altered and it reversed the transfer of funds into Mr. Cloud's account.

Shortly thereafter a check in the amount of $850,000, drawn upon Mr. Cloud's account at the Credit Union and made payable to Ms. Breedlove, was endorsed and deposited to Ms. Breedlove's checking account at Central Fidelity National Bank—to no avail, of course, as there were by then insufficient funds in Mr. Cloud's account to cover the check. In October 1997 an Internal Revenue Service search of Ms. Breedlove's home turned up the checkbook of Mr. Cloud—who did not live there—from which the $850,000 check had been written, as well as receipts for the $1,206,000 check Ms. Breedlove had deposited into Mr. Cloud's account.

The second transaction occurred in December 1997. Shortly after she had been sent an educational benefit check in the amount of $425.19, Ms. Breedlove deposited into her checking account at Nations-Bank a U.S. Treasury check made payable to herself, seemingly in the amount of $4,251.19. The next day, she withdrew $4,500.00 from her account.

At the close of Ms. Breedlove's trial, the district court instructed the jury in part as follows:

> [I]f you decide that the defendant was involved in the prior transactions, you may consider the evidence relating to the two other transactions solely for the purpose of deciding whether the defendant acted with the specific intent to defraud in committing the offenses charged in the indictment.
>
>    ...
>
> And ... I remind you that you have heard evidence relating to a bank account held by a person named William Cloud. You may not speculate as to who this person is or what role he may have had in the events that have been described to you.

Ms. Breedlove's counsel had objected in advance to the district court's mention of Mr. Cloud, on the ground that it was a "reference to a specific fact."

The jury convicted Ms. Breedlove on both counts of the indictment and the district court sentenced her on each count to

concurrent terms of 46 months of imprisonment, to be followed by five years of supervised release. In computing Ms. Breedlove's sentence, the district court considered her previous involvement with fraudulent checks both as relevant conduct and as evidence of more than minimal planning.

## II. Analysis

Upon appeal Ms. Breedlove raises three issues. She argues that the district court erred in instructing the jury to avoid speculation about Mr. Cloud and his role in the August 1997 transaction. She claims the district court improperly considered the August 1997 transaction in calculating her sentence. And she objects that the district court ordered her to serve a period of supervised release in excess of the statutory maximum.

### A. The Jury Instruction

■ Under Federal Rule of Criminal Procedure 52, we review a properly raised objection to a jury instruction only for nonharmless error; an objection that was not raised in the original proceeding we review only for plain error. *See United States v. Perkins,* 161 F.3d 66, 72 (D.C.Cir. 1998). An objection is not properly raised if it is couched in terms too general to have alerted the trial court to the substance of the petitioner's point. *See United States v. Pryce,* 938 F.2d 1343, 1350 (D.C.Cir.1991).

■ Counsel for Ms. Breedlove objected to the district court's instruction that the jury refrain from speculating about Mr. Cloud by stating that the instruction was a "reference to a specific fact." Upon appeal Ms. Breedlove elaborates: The instruction precluded the jury from considering the possibility that in August 1997 she unwittingly had cashed a check altered by Mr. Cloud. That fact would have supported Ms. Breedlove's defense that she did not know the $998,688.65 check had

been altered and therefore did not have the requisite intent to commit the crimes of which she was accused. Ms. Breedlove asserts that, in order to preserve her objection to the instruction, her counsel was required to point out to the district court only that the court should not make "reference to a specific fact"; that is, "trial counsel was not required to point out to the district court the value to the defense of the particular facts being foreclosed by the court's instruction, just to object that the court was erring by instructing on facts."

Read in context,[*] trial counsel's objection was not specific enough to convey the meaning Ms. Breedlove now attributes to it. The district court agreed that in her closing arguments counsel for Ms. Breedlove could refer to Mr. Cloud and to the evidence connecting him to the August 1997 transaction, but it did not want the jury to speculate about Mr. Cloud's role in that transaction. Counsel apparently sensed some disjunction between the district court's agreement that she could refer to Mr. Cloud and the court's concern that the jury not speculate "as to who he may be." She did not, however, make the substance of this objection, as Ms. Breedlove has now explained it, clear to the district court. *See United States v. Spriggs,* 102 F.3d 1245, 1259–60 (D.C.Cir. 1996) (finding appellants failed to preserve argument where objection before district court did not include key terms used in appeal). Further, counsel's apparent acquiescence in closing the matter ("Your Honor, if I hear you correctly....") gives no indication that she remained dissatisfied with the result.

Counsel's twice-stated objection that the proposed jury instruction "is a reference to a specific fact" barely resembles her present argument, which is that the jury instruction invaded the province of the jury as factfinder by removing from the jury's consideration a fact that might have raised a reasonable doubt about her guilt. Inso-

[*] The relevant portions of the transcript are appended at the end of this opinion.

far as that is her objection, we hold that Ms. Breedlove did not properly preserve it for appeal. We will therefore upset her conviction only if the instruction rises to the level of plain error.

The Supreme Court defined plain error in *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). First, of course, the district court must have made an error by "[d]eviati[ng] from a legal rule." *Id.* at 732–33, 113 S.Ct. 1770. Second, the error must be one that should have been "obvious" to the district court. *Id.* at 734, 113 S.Ct. 1770. Third, the error must have "affect[ed] substantial rights," that is, "been prejudicial", "affected the outcome of the district court proceedings." *Id.* A court of appeals should correct even a plain error affecting substantial rights only if there would otherwise be a miscarriage of justice, as there would be if the defendant is actually innocent of the offense, or if the error " 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* at 736, 113 S.Ct. 1770 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)).

The evidence concerning Mr. Cloud's role in the August 1997 transaction was sparse. It included testimony by a Navy Federal Credit Union investigator who concluded that Mr. Cloud had endorsed the $1,206,000 check. The investigator stated that he believed Mr. Cloud had been in "cahoots" with Ms. Breedlove in executing the check scheme. Ms. Breedlove did not submit any additional evidence linking Mr. Cloud to the August 1997 transaction or to any other act involving her. The district court prevented Ms. Breedlove neither from introducing further evidence about Mr. Cloud nor from arguing to the jury about such evidence as there was linking Mr. Cloud to the August 1997 transaction. The district court merely aimed to preclude the jury from speculating about Mr. Cloud absent any substantial evidence, in the words of trial counsel for Ms. Breedlove, "as to what Mr. Cloud may or may not have done." We see no error in the district court's exercise of caution; the instruction was not so restrictive as to remove from the jury any of its factfinding authority. *See Curley v. United States*, 160 F.2d 229, 232 (D.C.Cir. 1947) ("functions of the jury include ... the drawing of justifiable inferences of fact from proven facts.... The jury may not be permitted to conjecture merely, or to conclude upon pure speculation").

Even had the district court erred as claimed, the overwhelming evidence that Ms. Breedlove is guilty of the crime charged would have rendered the error harmless beyond a reasonable doubt. Ms. Breedlove's intent to commit the crimes of which she stands convicted is apparent from the evidence. She opened a checking account at the First Union National Bank only days before she attempted to deposit the check for $998,688.65. When she opened the account she asked whether the bank offered tax-deferred or retirement accounts into which she might be able to deposit a half million or a million dollars, adding falsely that she was the owner of several lucrative businesses. The teller who assisted Ms. Breedlove when she made the deposit told her a "hold" would be placed upon the check—that is, she could not draw upon the credit to her account until the bank had collected good funds for the check—because of its amount. Ms. Breedlove claims that she did not know the check had been altered, but it is difficult to conceive of a bank placing a hold on a check for $58.65 due to its amount; at the very least, Ms. Breedlove's anticipation a few days earlier that she would be depositing a large sum, together with her ready acquiescence in the delayed availability of funds, suggests that she knew the check she deposited was for a significant amount, not for $58.65. A reasonable juror could hardly fail to conclude from these facts that Ms. Breedlove intended to utter an altered check.

## B. The Sentence

■ When it calculated Ms. Breedlove's base offense level, the district court included not only the potential loss involved in the offense for which she was convicted but also the potential losses from the August 1997 and December 1997 transactions, both of which the court found were part of the "same course of conduct" as the January 1998 transaction. *See* U.S. Sentencing Guidelines Manual § 1B1.3(a)(2) & application note 9. Upon appeal Ms. Breedlove argues that the August 1997 transaction was too remote in time and too different in character from the offenses of December 1997 and January 1998 to be considered part of the same course of conduct. We afford due deference to the district court's application of the Guidelines to the facts of Ms. Breedlove's case. *See United States v. Jackson,* 161 F.3d 24, 28 (D.C.Cir.1998).

■ The Sentencing Guidelines list several factors for determining whether two or more offenses are part of the same course of conduct, including the similarity of the offenses, the regularity of the offenses, and the time interval between the offenses. *See* U.S. Sentencing Guidelines Manual § 1B1.3 application note 9(B). If in a particular case any one of these factors is counter-indicative, then the offenses should not be deemed a single course of conduct unless another of the factors is particularly suggestive thereof. *See id.*

In *United States v. Pinnick* we upheld the district court's determination that a defendant's repeated use of counterfeit checks constituted a single course of conduct. The defendant had used different aliases in presenting the checks, and had used the checks to obtain different types of proceeds—cash in two instances and an automobile in another. The instruments and the methods used by the defendant were sufficiently similar, however, to establish an " 'identifiable behavior pattern of specified criminal activity.' " 47 F.3d 434, 439 (D.C.Cir.1995) (quoting *United States v. Perdomo,* 927 F.2d 111, 115 (2d Cir.1991)).

■ In this case the August 1997, December 1997, and January 1998 transactions share a common *modus operandi.* In each transaction, Ms. Breedlove presented an altered check for deposit to a controlled account (either hers or Mr. Cloud's) at a financial institution. Ms. Breedlove then sought to reach the proceeds of the fraud by drawing checks upon the accounts into which she had deposited the altered checks—except that Ms. Breedlove was apprehended before she could draw proceeds from the January 1998 transaction.

Ms. Breedlove points out that each offense involved a different depository institution, but that suggests to us only that Ms. Breedlove sought to reduce the risk of suspicion. She also argues that the August 1997 transaction is not similar to the December 1997 and January 1998 transactions because only the latter two involved U.S. Treasury checks. That distinction bears not at all upon whether she used the checks in a single course of conduct. More important, each of the checks was legitimately issued for a small amount, then altered for the purpose of obtaining a larger amount from an unwitting depository institution. As for the five months between the two transactions, the interval hardly seems significant in view of the similarity of the offenses. We therefore defer to the district court's determination that the August 1997 transaction was part of the same course of conduct as the December 1997 and January 1998 transactions for the purpose of calculating Ms. Breedlove's base offense level.

The district court also considered the August 1997 transaction in enhancing Ms. Breedlove's sentence by two levels for "more than minimal planning," *see* U.S. Sentencing Guidelines Manual § 2F1.1(b)(2), defined as "more planning than is typical for commission of the offense in a simple form." *Id.* at § 1B1.1 application note 1(f). Such planning is deemed present "in any case involving re-

peated acts over a period of time, unless it is clear that each instance was purely opportune." *Id.* Three repeated (non-opportunistic) acts are generally sufficient to support a finding of more than minimal planning. *See United States v. Kim,* 23 F.3d 513, 515 (D.C.Cir.1994).

Ms. Breedlove's argument that the district court improperly relied upon the August 1997 transaction as evidence of more than minimal planning is but a corollary of her now rejected argument that that transaction was not relevant conduct for sentencing purposes. ("Absent the $1,206,-000 Cloud check, . . . with only two acts of relevant conduct rather than three, the two-point 'more than minimal planning' enhancement for 'repeated acts' . . . no longer applies.") The corollary fails with the proposition from which it is derived. We hold, therefore, that the district court properly enhanced Ms. Breedlove's sentence for more than minimal planning.

C. Supervised Release Term

Ms. Breedlove argues, and the Government agrees, that the district court improperly sentenced her to a term of five years of supervised release on each of the two counts of which she was convicted. The conviction for uttering carries with it a statutory maximum imprisonment of 15 years, making it a Class C felony. *See* 18 U.S.C. §§ 472, 3559(a)(3). As Ms. Breedlove points out, the maximum authorized term of supervised release for a Class C felony is three years. *See* 18 U.S.C. § 3583(b)(2). We therefore remand this case to the district court for the limited purpose of correcting this error.

III. Conclusion

For the foregoing reasons, we affirm Ms. Breedlove's conviction. We remand this case, however, so that the district court may impose a term of supervised release within the statutory maximum.

*So ordered.*

APPENDIX

Ms. Jankowski: Your Honor, I have one other objection and, Your Honor, this may be my newness to this jurisdiction, but there was no testimony at all concerning motive. And there is an instruction that says that intent and motive shouldn't be confused and something along the lines of if she acted with a good motive, that is not supposed to be taken into consideration.

I just don't see where that was an issue at all in this case that would even warrant an instruction. This is not a case where Ms. Breedlove testified that her children were hungry and she desperately needed the money, or anything like that. . . .

The Court: I see your point. The instruction is included, however, because I anticipate that there will be speculation on the part of the jury as to what motivated her to do what she did, particularly in view of the fact that we have this mysterious Mr. Cloud, whose presence in this case has never been explained. So I want to dissuade them from speculating about who Mr. Cloud was or what his role may have been.

Ms. Jankowski: Your Honor, I can see your concern, however, I think that the instruction—I don't believe that the instruction really addresses the possibility that they may speculate about Mr. Cloud. It kind of suggests that personal advancement or financial gain are two well recognized motives. It kind of suggests a motive that sometimes someone might attempt an act for advancement or financial gain, and that that is saying that is still acceptable and that you can't confuse motive with intent.

It doesn't really say to the jury—

The Court: Would you like me to leave out that paragraph, "personal advancement and financial gain"? And I think I may make some specific reference to Mr. Cloud and that they are not to speculate on what part he may have played, if any, in connection with these matters.

Ms. Jankowski: Your Honor, the only objection I have to that is a reference to a specific fact.

The Court: That's what they are going to do. I beg your pardon?

Ms. Jankowski: That is a reference to a specific fact.

The Court: Well, I am also, in part, anticipating your argument. I expect that you will make reference to Mr. Cloud, and I think maybe in the context, they ought to be told that they are not to speculate on Mr. Cloud.

Ms. Jankowski: Certainly, Your Honor, if they are to determine whether or not Ms. Breedlove committed the prior bad act of—they are supposed to assume that she committed that act and assume that she had knowledge of the check's alteration. I can certainly argue to the jury that it was a check that was made out to him, a check that was endorsed by him, and they can just as likely assume that he—I don't think that is an improper argument to make to the jury. Your Honor, she is being accused of a prior bad act.

The Court: There is evidence in the case to implicate your client in the presentation of these fraudulent documents. The bank photographs alone may provide sufficient evidence for the jury's purposes, even though the witnesses themselves couldn't identify her.

Also, the fact that she was the one who apparently endeavored to profit by the funds. There is circumstantial evidence to point to your client as the one who was, if you will, the culpable party insofar as these instruments were concerned.

There is no evidence one way or another as to Mr. Cloud, other than the fact that his signature mysteriously appears and his bank account mysteriously was used.

Now, I am not suggesting that you are not permitted to argue, but I don't want the jury speculating, on the basis of a total absence of evidence, as to who he may be.

Ms. Jankowski: Your Honor, if I hear you correctly, I can certainly argue to the jury that Ms. Breedlove has not been proven to have committed this offense, but you are going to tell the jury that they cannot speculate as to what Mr. Cloud may or may not have done?

The Court: That's correct. That's the way I am going to leave it.

Ms. Jankowski: If we can then somehow—

The Court: But I will take out that middle paragraph of instruction number 35 [regarding the distinction between intent and motive] to which you had an objection.

Ms. Jankowski: Your Honor, the only—

The Court: That does not preclude [the prosecution] from arguing it, however.

Ms. Jankowski: Certainly

The Court: You want me to take that out?

Ms. Jankowski: Yes, Your Honor.