United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued February 9, 1999 Decided March 5, 1999 

 No. 96-3105

 United States of America, 

 Appellee

 v.

 Ivan T. Joseph, 

 Appellant

 Appeal from the United States District Court 

 for the District of Columbia 

 (No.88cr00090-01)

 Evelina J. Norwinski, Assistant Federal Public Defender, 
argued the cause for appellant. With her on the briefs was 
A.J. Kramer, Federal Public Defender. Santha Sonenberg, 
Assistant Federal Public Defender, entered an appearance.

 Ivan T. Joseph, appearing pro se, was on the briefs for 
appellant.

 Barbara A. Grewe, Assistant United States Attorney, ar-
gued the cause for appellee. With her on the brief were 
Wilma A. Lewis, United States Attorney, John R. Fisher, 
Mary-Patrice Brown, Thomas C. Black and Karen L. Mel-
nik, Assistant United States Attorneys.

 Before: Wald, Henderson and Randolph, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Wald.

 Wald, Circuit Judge: Appellant Ivan T. Joseph was con-
victed in 1988 for several criminal offenses including violation 
of 18 U.S.C. s 924(c)(1), which mandates a prison term of five 
or more years for anyone who "uses or carries a firearm" 
"during and in relation to" a drug trafficking crime. The 
conviction was affirmed on appeal. See United States v. 
Joseph, 892 F.2d 118 (D.C. Cir. 1989). Six years later Joseph 
filed a motion under 28 U.S.C. s 2255 to vacate, set aside, or 
correct his sentence, arguing that the evidence presented at 
trial was insufficient to support a s 924(c)(1) conviction and 
that the jury instruction defining "using" was flawed in light 
of Bailey v. United States, 516 U.S. 137 (1995). He now 
appeals the district court's denial of the s 2255 motion, see 
United States v. Joseph, 939 F. Supp. 26 (D.D.C. 1996), 
repeating the same arguments. Joseph presents two new 
arguments as well--that the jury instruction defining "carry-
ing" a firearm was flawed in light of the recently decided case 
of Muscarello v. United States, 118 S. Ct. 1911 (1998),1 and 
that the indictment itself did not follow the statutory descrip-
tion of the offense. We agree with the district court's 
disposition of the "using" instruction and sufficiency claims 
and hold further as to the "carrying" claim that Muscarello 
does not render erroneous the "carrying" instruction and that 
the indictment was proper.

 I. Background

 Joseph and his younger brother Lawrence Mayers (also 
known as Shawn Joseph) arrived by train at Union Station in 

__________
 1 We ordered the parties to address the effect of Muscarello. See 
United States v. Joseph, No. 96-3105 (D.C. Cir. Sept. 1, 1998) (per 
curiam).

Washington, D.C. on February 23, 1988. At the time they 
came under police observation Mayers carried a tote bag. 
The brothers walked to a public telephone and Joseph placed 
a call. Police officers Detective Curley and Sergeant Bren-
nan approached them and began to converse with them. In 
the course of their conversation Curley received permission 
from Mayers to search the tote bag. Because Mayers had 
(falsely) told the officers that he was only seventeen years 
old, Curley also sought and obtained consent for the search 
from Joseph. As Curley began the search Joseph reached 
into the bag, asking that the search be conducted elsewhere, 
and stating, "I have underwear and things in the bag." After 
moving to a less trafficked part of the train station, Curley 
continued the search. He found a loaded gun and 70.55 
grams of crack cocaine in the tote bag.2

 Joseph and Mayers were tried jointly before a jury on four 
counts: (1) possession with intent to distribute cocaine base in 
violation of 21 U.S.C. ss 841(a), (b)(1)(A)(iii) and 18 U.S.C. 
s 2; (2) using and carrying a firearm during and in relation 
to a drug trafficking crime in violation of 18 U.S.C. 
s 924(c)(1)3; (3) possession of an unregistered firearm in 

__________
 2 Additional facts concerning the events at Union Station are set 
out in our opinion in Joseph's direct appeal. See Joseph, 892 F.2d 
at 120-21.

 3 Subsection (c)(1) has been amended in ways not relevant to this 
case since Joseph was indicted. It currently provides in full:

 Whoever, during and in relation to any crime of violence or 
 drug trafficking crime (including a crime of violence or drug 
 trafficking crime which provides for an enhanced punishment if 
 committed by the use of a deadly or dangerous weapon or 
 device) for which he may be prosecuted in a court of the United 
 States, uses or carries a firearm, shall, in addition to the 
 punishment provided for such crime of violence or drug traf-
 ficking crime, be sentenced to imprisonment for five years, and 
 if the firearm is a short-barreled rifle, short-barreled shotgun, 
 or semiautomatic assault weapon, to imprisonment for ten 
 years, and if the firearm is a machinegun, or a destructive 
 device, or is equipped with a firearm silencer or firearm 
 muffler, to imprisonment for thirty years. In the case of his 

violation of D.C. Code s 6-2311(a); and (4) possession of 
ammunition for the unregistered firearm in violation of D.C. 
Code s 6-2361. With respect to the s 924(c)(1) charge, the 
jury instructions included the following:

 This offense has three elements which the government 
 must prove to your satisfaction beyond a reasonable 
 doubt.
 First, that on or about the date alleged in the indict-
 ment, the defendants used or carried a firearm.
 Second, that the defendants had knowledge that what 
 they were using or carrying was a firearm.
 Third, that they did so during and in relation to the 
 commission of a drug trafficking crime.
 The term "use" means to employ or avail oneself of.
 The term "carry" means to bear on or about one's 
 person, or to be convenient of access or within reach.

Transcript 6/21/88 at 185 (emphasis added). Joseph was 
convicted on all four counts, Mayers only on the first.4 
Joseph received concurrent sentences of ten years, one year, 
and one year for the first, third, and fourth counts, respec-
tively. As required by s 924(c)(1), a consecutive five year 
term was imposed for the second count.

__________
 second or subsequent conviction under this subsection, such 
 person shall be sentenced to imprisonment for twenty years, 
 and if the firearm is a machinegun, or a destructive device, or 
 is equipped with a firearm silencer or firearm muffler, to life 
 imprisonment without release. Notwithstanding any other pro-
 vision of law, the court shall not place on probation or suspend 
 the sentence of any person convicted of a violation of this 
 subsection, nor shall the term of imprisonment imposed under 
 this subsection run concurrently with any other term of impris-
 onment including that imposed for the crime of violence or 
 drug trafficking crime in which the firearm was used or 
 carried.

 4 On direct appeal we explained the verdict on the ground that 
the jury "apparently conclud[ed] that the physical possession by the 
younger brother represented no more than his performing the duty 
of a conduit for appellant." Joseph, 892 F.2d at 125 n.3.

 Joseph unsuccessfully challenged his conviction on several 
grounds on direct appeal. He argued, inter alia, that the 
evidence was insufficient to support the s 924(c)(1) conviction 
on either the "using" or "carrying" grounds. Explaining that 
sufficiency under one prong was enough to sustain the convic-
tion, and without deciding whether there was sufficient evi-
dence that Joseph "used" a firearm, the court held that "the 
evidence fits well within the statutory meaning of 'carrying' 
as defined in our recent decision in United States v. Evans, 
888 F.2d 891 (D.C. Cir. 1989)." Joseph, 892 F.2d at 125-26. 
Quoting Evans to explain the meaning of "carry," the court 
continued: "When a person 'has a present ability to exercise 
dominion and control over' a firearm and further has the 
firearm 'within easy reach and available to protect him during 
his ongoing [drug trafficking] offense,' [ ] he has rather 
plainly committed the act Congress intended to preclude by 
the passage of the statute." Id. at 126 (first brackets in 
original).

 In 1995 the Supreme Court rejected as too broad this 
circuit's definition of "uses" in the s 924(c)(1) context. We 
had held that " 'one uses a gun, i.e., avails oneself of a gun, 
and therefore violates [s 924(c)(1)], whenever one puts or 
keeps the gun in a particular place from which one (or one's 
agent) can gain access to it if and when needed to facilitate a 
drug crime.' " Bailey, 516 U.S. at 141 (quoting United States 
v. Bailey, 36 F.3d 106, 115 (D.C. Cir. 1994) (in banc)). The 
Supreme Court said, to the contrary, "use" requires "active 
employment of the firearm." Id. at 144.

 Like many others before and after him, Joseph responded 
to the Supreme Court's Bailey decision by collaterally attack-
ing his s 924(c)(1) conviction in a 28 U.S.C. s 2255 motion. 
Joseph argued that, under Bailey, his conviction was based 
on insufficient evidence of "uses or carries" and rested on an 
improper jury instruction about the meaning of "use." The 
district court rejected his sufficiency argument by explaining 
that in a case where two acts are charged in the conjunctive 
and "where a jury has two or more bases of conviction, and 
the evidence on one basis is insufficient, a conviction will 
nevertheless be upheld if the evidence was sufficient on the 
alternative basis." United States v. Joseph, 939 F. Supp. at 


27 & n.3 (citing Griffin v. United States, 502 U.S. 46, 56 
(1991); Turner v. United States, 396 U.S. 398 (1970)). The 
district court reasoned that this principle applied to Joseph 
because Bailey only involved the "use" prong of s 924(c)(1) 
and thus did not undermine this court's prior holding on 
direct appeal that the evidence was sufficient to sustain 
Joseph's conviction under a "carry" theory. See id. at 28. 
Nor was the district court persuaded by Joseph's objections 
to the jury instruction on "use," even though that instruction 
did not use the Supreme Court's phrase "active employment 
of the firearm." The court considered the instruction ade-
quate because it defined "use" by other phrases which the 
Supreme Court considered the functional equivalent of "active 
employment"--i.e., "to employ" and "to avail oneself of." Id. 
The court relied on a specific passage from Bailey to that 
effect:

 The word "use" in the statute must be given its "ordinary 
 or natural" meaning, a meaning variously defined as "[t]o 
 convert to one's service," "to employ," "to avail oneself 
 of," and "to carry out a purpose or action by means of." 
 These various definitions of "use" imply action and imple-
 mentation.

516 U.S. at 145 (citations omitted; brackets in original; 
emphases added).

 Joseph now appeals the denial by the district court of his 
s 2255 motion, and raises dual objections to the "carry" 
charge as well.

 II. Discussion5

 A.Use of the Conjunctive in the Indictment

 Joseph claims error in the fact that the indictment used the 
conjunctive ("used and carried") while the statute uses the 
disjunctive ("uses or carries"). This is not an error:

__________
 5 In this section we do not distinguish between arguments raised 
by Joseph himself in his pro se briefs and by the federal public 
defender on Joseph's behalf.

 The appellant contends that ... where legislative defini-
 tion of a crime sets forth disjunctively a number of acts, 
 the commission of any one of which will be a violation of 
 the statute, the prosecution may in a single count of an 
 indictment or information charge several or all of such 
 acts in the conjunctive and under such charge make 
 proof of any one or more of the acts, proof of one alone, 
 however, being sufficient to support a conviction. This is 
 correct.... 

District of Columbia v. Hunt, 163 F.2d 833, 837-38 (D.C. Cir. 
1947) (citing Crain v. United States, 162 U.S. 625 (1896)). 
This rule applies to s 924(c)(1) indictments drafted in the 
conjunctive, which can support a conviction if the jury is 
charged and the violation is proved disjunctively. See United 
States v. Dickey, 102 F.3d 157, 164 n.8 (5th Cir. 1996). Using 
the conjunctive in the indictment protects the defendant's 
right to be informed of the charge(s) he faces:

 Frequently a statute will specify various ways in which a 
 particular crime may be committed. It is enough to 
 allege one of these ways without negativing the others. 
 Or the pleading may allege commission of the offense by 
 all the acts mentioned if it uses the conjunctive "and" 
 where the statute uses the disjunctive "or." But if the 
 indictment or information alleges the several acts in the 
 disjunctive it fails to inform the defendant which of the 
 acts he is charged with having committed, and it is 
 insufficient.

1 Charles Alan Wright, Federal Practice and Procedure 
s 125, at 563-65 (1999) (footnotes omitted).

 B.The "Use" Jury Instruction

 We agree with the district court's rejection of Joseph's 
argument that the "use" instruction was flawed. The jury 
instruction did not need to use the specific phrase "active 
employment." Rather, it only needed to convey the meaning 
of that phrase to assure that a conviction would satisfy 
Bailey. We easily find that the instruction here did so by 
using two other phrases from the dictionary meaning of "use" 


that the Supreme Court itself cited as conveying its correct 
meaning. See Bailey, 516 U.S. at 145.

 C.The "Carry" Jury Instruction

 Joseph's objection to the "carry" instruction demands more 
attention. As this court's discussion of Evans in Joseph's 
direct appeal demonstrates, our circuit law has previously 
defined "carry" by focusing on present access and control. 
See supra p. 5; see also United States v. Toms, 136 F.3d 176, 
181 (D.C. Cir. 1998) ("the weapon must be convenient of 
access and within reach"); United States v. Anderson, 881 
F.2d 1128, 1141 (D.C. Cir. 1989) (challenge to the same 
"carry" definition as given at Joseph's trial "almost frivolous" 
under plain error standard).6 Joseph argues that Muscarello 
v. United States, 118 S. Ct. 1911 (1998), added a further 
restriction on the meaning of "carry," requiring that a gun be 
physically "conveyed" by the defendant.7

 In Muscarello, the Court upheld "carry" convictions 
against a defendant who kept a gun in his locked glove 
__________
 6 For simplicity we refer herein to our circuit's previous defini-
tions of "carry" as the "Evans definition," recognizing that other 
cases have employed variations on the Evans language.

 7 This argument was not raised at trial, on direct appeal, or 
before the district court on the s 2255 motion because Muscarello 
was decided by the Supreme Court after the district court ruled on 
the s 2255 motion. The government argues that Joseph has proce-
durally defaulted this claim by not raising it earlier and that he 
must therefore demonstrate "cause and prejudice" or "actual inno-
cence." Joseph asks us to apply the much laxer harmless error 
standard under the supervening-decision doctrine.

 In United States v. Perkins, 161 F.3d 66 (D.C. Cir. 1998), the 
court examined procedural default issues in the s 924(c)(1) context 
in great detail, but ultimately found it unnecessary to resolve them. 
We do likewise. Even under the standard Joseph requests and 
which is most favorable to him--harmless error--the conviction 
survives. See id. at 74. Harmless error review of a jury instruc-
tion cannot cause a reversal in the absence of error and, as we 
explain, Muscarello does not render the "carry" instruction improp-
er.

compartment as he drove to a drug sale and two defendants 
who stored guns in the trunk of the car they rode in to a drug 
sale. See Muscarello, 118 S. Ct. at 1914. The Court recog-
nized that "the word 'carry' has many different meanings." 
Id.; see also id. at 1915 (referring to the twenty-sixth defini-
tion of "carry" in the Oxford English Dictionary). Its hold-
ing, hence, was confined to determining that the word's 
"primary" meaning, involving conveyance and moving, creat-
ed a proper basis for a conviction under s 924(c)(1). That 
meaning, it held, was satisfied by placing firearms in an 
inaccessible part of a car which the defendants drove or rode 
in.

 Given the vehicular situation it was addressing, it is not 
surprising that the Muscarello opinion repeatedly emphasized 
the centrality of the concept of conveyance to its decision. 
Indeed, it was only the fact that the inaccessible guns had 
been hidden in a moving vehicle that gave credence to its 
conclusion that the defendants were "carrying" them. From 
this emphasis, however, Joseph would have us conclude that 
proof of personal conveyance is a necessary element of any 
conviction under the statute's "carry" prong. But the Court 
never suggested that the meaning it applied in Muscarello is 
the only one that Congress intended to reach by making 
"carry" a part of the statute. To the contrary, Muscarello 
explains that "a gangster might 'carry' a gun (in colloquial 
language, he might 'pack a gun') even though he does not 
move from his chair." Id. at 1915-16. The statute would be 
satisfied in this non-conveyance scenario because of an alter-
native "meaning that suggests support rather than movement 
or transportation...." Id. at 1915.

 Our Evans definition of "carry" is satisfied by proof of 
dominion and control and ready accessibility to a gun during 
a drug crime. That definition may vary in some aspects from 
the support-based definition cited in Muscarello, but again 
Muscarello does not state that its "support" example is the 
only legitimate variation from personal or vehicular "convey-
ance" that satisfies the statute. Language in Muscarello is 
cited by Joseph for the proposition that either physical pos-


session or conveyance in a vehicle is a prerequisite to "carry-
ing":

 The question before us is whether the phrase "carries a 
 firearm" is limited to the carrying of firearms on the 
 person. We hold that it is not so limited. Rather, it also 
 applies to a person who knowingly possesses and conveys 
 firearms in a vehicle, including in the locked glove com-
 partment or trunk of a car, which the person accompa-
 nies.

Id. at 1913-14. We think the better contextual reading of 
this passage is that the Court was simply setting up a 
contrast between a circumstance that everyone would agree 
amounts to "carrying" and the facts of the Muscarello case in 
order to illuminate the precise issue it was confronting. 
Thus, what Muscarello tells us is that conveyance-based and 
support-based definitions are proper under the statute, but it 
certainly does not tell us that all other definitions--such as 
the Evans formula--are improper, especially as applied to the 
facts of this case. We note especially the Court's endorse-
ment of the term's application to the placement of the gun in 
a location which allows the person to "accompany" it in its 
journey. If, as here, the gun is in a tote bag rather than a 
glove compartment but the defendant "accompanies" it none-
theless and maintains dominion over and access to it, surely 
the Court's concept of "carrying" is satisfied.

 Moreover, there are other indications in Muscarello that 
the Evans definition would meet the Court's approval. The 
Court looked to the purpose of including "carry" in the 
statute, explaining that Congress sought to "combat the 
'dangerous combination' of 'drugs and guns,' " id. at 1916 
(quoting Smith v. United States, 508 U.S. 223, 240 (1993)), 
and to "persuad[e] a criminal to leave his gun at home." Id. 
From these perspectives, surely Congress would want to 
reach those whose employment of firearms satisfies the "car-
ry" definition given at Joseph's trial ("to bear on or about 
one's person, or to be convenient of access or within reach"). 
Employing Muscarello's phrasing, "[i]t is difficult to say that, 
considered as a class," such people "are less dangerous, or 


less deserving of punishment, than those who carry handguns 
on their person." Id. at 1916-17. The Court also stated that 
" '[c]arry' implies personal agency and some degree of posses-
sion...." Id. at 1917. Our Evans definition meets these 
requirements.

 We conclude that the only change in the definition of 
"carry" in our circuit worked by Muscarello is an expansion. 
When a firearm is not "carried" under the still valid Evans 
definition, a conviction may now be obtained if the defendant 
conveys the firearm by car within the meaning of Muscarello.

 Joseph argues less strenuously that, even if the jury in-
struction in his case does not conflict with Muscarello for lack 
of a personal or vehicular conveyance requirement, the in-
struction still allowed an unlawful conviction for what the 
Supreme Court called "transporting" a firearm. In defining 
"transport," the Court explained that it "implies the move-
ment of goods in bulk over great distances," pointing to the 
use of a parcel delivery service as an example. See id. In 
that example, the Court noted that only the truck driver "has 
'carried' the package in the sense of 'carry' that we believe 
Congress intended." Id. The Court also distinguished the 
two terms "carry" and "transport" by noting that " '[c]arry' 
implies personal agency and some degree of possession, 
whereas 'transport' does not have such a limited connota-
tion...." Id. Given the trial court instruction's emphasis on 
access in defining "carrying," no conviction based on "trans-
porting" would have been allowed.

 We therefore hold that the "carry" instruction in Joseph's 
trial was proper. Because there was no error, the conviction 
survives this challenge.

 D.Sufficiency of the Evidence

 In an argument closely related to the "carry" jury instruc-
tion claim, Joseph contends that the evidence was insufficient 
for a s 924(c)(1) conviction on either a "use" or "carry" 
charge. On direct appeal, we said that "[o]n an indictment 
charged in the conjunctive, when there is evidence sufficient 
to support conviction on one of the acts charged, the convic-

tion will not be disturbed for lack of sufficiency of the 
evidence." Joseph, 892 F.2d at 125.8 We reviewed the 
evidence, concluded that it was sufficient under the Evans 
definition of "carry,"9 and said that whether it was sufficient 
under the "use" prong was therefore irrelevant. See id. at 
125-26. That decision dooms Joseph's claim of insufficiency 
here. Had our understanding of "carry" at the time of the 
appeal proved too expansive under Muscarello, as Joseph 
argues, we would have had to revisit the sufficiency question 
and give careful scrutiny to Joseph's claim. But we are 
satisfied the Evans definition remains good law. Thus, since 
Bailey addressed the "use" prong only, and Muscarello does 
not invalidate our view of "carry," the conclusion reached in 
Joseph's direct appeal in 1989 that there was sufficient evi-
dence of "carrying" remains sound.

 III. Conclusion

 Because Joseph has highlighted no errors in his trial and 
conviction, the denial of his 28 U.S.C. s 2255 motion is 
affirmed.

 So ordered.

__________
 8 We relied for this proposition on Turner v. United States, 396 
U.S. 398 (1970). Turner closely paralleled this case in that it 
involved a narcotic statute phrased in the disjunctive ("to purchase, 
sell, dispense, or distribute....") and an indictment substituting 
"and" for the statutory "or." See id. at 402 & n.2. The Court 
explained that "[t]he general rule is that when a jury returns a 
guilty verdict on an indictment charging several acts in the conjunc-
tive ... the verdict stands if the evidence is sufficient with respect 
to any one of the acts charged." Id. at 420.

 9 We reached this conclusion because the jury convicted Joseph 
on the firearm possession count (plainly on a constructive or joint 
possession theory), he "was at all relevant times within a few steps 
of, and usually no more than an arm's span from, the firearm," and 
the possession convictions supported the conclusion that he "car-
ried" the gun knowingly and in relation to the drug trafficking 
crime. Joseph, 892 F.2d at 125-26.