UNITED STATES of America, Appellee,

v.

Ivan T. JOSEPH, Appellant.

No. 96–3105.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 9, 1999.

Decided March 5, 1999.

Rehearing and Rehearing En Banc Denied May 12, 1999.

Evelina J. Norwinski, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was A.J. Kramer, Federal Public Defender. Santha Sonenberg, Assistant Federal Public Defender, entered an appearance.

Ivan T. Joseph, appearing pro se, was on the briefs for appellant.

Barbara A. Grewe, Assistant United States Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, United States Attorney, John R. Fisher, Mary-Patrice Brown, Thomas C. Black and Karen L. Melnik, Assistant United States Attorneys.

Before: WALD, HENDERSON and RANDOLPH, Circuit Judges.

Opinion for the Court filed by Circuit Judge WALD.

WALD, Circuit Judge:

Appellant Ivan T. Joseph was convicted in 1988 for several criminal offenses including violation of 18 U.S.C. § 924(c)(1), which mandates a prison term of five or more years for anyone who "uses or carries a firearm" "during and in relation to" a drug trafficking crime. The conviction was affirmed on appeal. See United States v. Joseph, 892 F.2d 118 (D.C.Cir.1989). Six years later Joseph filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence, arguing that the evidence presented at trial was insufficient to support a § 924(c)(1) conviction and that the jury instruction defining "using" was flawed in light of Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). He now appeals the district court's denial of the § 2255 motion, see United States v. Joseph, 939 F.Supp. 26 (D.D.C.1996), repeating the same arguments. Joseph presents two new arguments as well—that the jury instruction defining "carrying" a firearm was flawed in light of the recently decided case of Muscarello v. United States, 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998),[1] and that the indictment itself did not follow the statutory description of the offense. We agree with the district court's disposition of the "using" instruction and sufficiency claims and hold further as to the "carrying" claim that Muscarello does not render erroneous the "carrying" instruction and that the indictment was proper.

1. We ordered the parties to address the effect of Muscarello. See United States v. Joseph, No. 96– 3105 (D.C.Cir. Sept.1, 1998) (per curiam).

## I. BACKGROUND

Joseph and his younger brother Lawrence Mayers (also known as Shawn Joseph) arrived by train at Union Station in Washington, D.C. on February 23, 1988. At the time they came under police observation Mayers carried a tote bag. The brothers walked to a public telephone and Joseph placed a call. Police officers Detective Curley and Sergeant Brennan approached them and began to converse with them. In the course of their conversation Curley received permission from Mayers to search the tote bag. Because Mayers had (falsely) told the officers that he was only seventeen years old, Curley also sought and obtained consent for the search from Joseph. As Curley began the search Joseph reached into the bag, asking that the search be conducted elsewhere, and stating, "I have underwear and things in the bag." After moving to a less trafficked part of the train station, Curley continued the search. He found a loaded gun and 70.55 grams of crack cocaine in the tote bag.[2]

Joseph and Mayers were tried jointly before a jury on four counts: (1) possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a), (b)(1)(A)(iii) and 18 U.S.C. § 2; (2) using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)[3]; (3) possession of an unregistered firearm in violation of D.C.Code § 6–

2311(a); and (4) possession of ammunition for the unregistered firearm in violation of D.C.Code § 6–2361. With respect to the § 924(c)(1) charge, the jury instructions included the following:

> This offense has three elements which the government must prove to your satisfaction beyond a reasonable doubt.
>
> First, that on or about the date alleged in the indictment, the defendants used or carried a firearm.
>
> Second, that the defendants had knowledge that what they were using or carrying was a firearm.
>
> Third, that they did so during and in relation to the commission of a drug trafficking crime.
>
> *The term "use" means to employ or avail oneself of.*
>
> *The term "carry" means to bear on or about one's person, or to be convenient of access or within reach.*

Transcript 6/21/88 at 185 (emphasis added). Joseph was convicted on all four counts, Mayers only on the first.[4] Joseph received concurrent sentences of ten years, one year, and one year for the first, third, and fourth counts, respectively. As required by § 924(c)(1), a consecutive five year term was imposed for the second count.

---

**2.** Additional facts concerning the events at Union Station are set out in our opinion in Joseph's direct appeal. *See Joseph*, 892 F.2d at 120–21.

**3.** Subsection (c)(1) has been amended in ways not relevant to this case since Joseph was indicted. It currently provides in full:

> Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years, and if the firearm is a short-barreled rifle, short-barreled shotgun, or semiautomatic assault weapon, to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm

muffler, to imprisonment for thirty years. In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or firearm muffler, to life imprisonment without release. Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried.

**4.** On direct appeal we explained the verdict on the ground that the jury "apparently conclud[ed] that the physical possession by the younger brother represented no more than his performing the duty of a conduit for appellant." *Joseph*, 892 F.2d at 125 n. 3.

Joseph unsuccessfully challenged his conviction on several grounds on direct appeal. He argued, *inter alia*, that the evidence was insufficient to support the § 924(c)(1) conviction on either the "using" or "carrying" grounds. Explaining that sufficiency under one prong was enough to sustain the conviction, and without deciding whether there was sufficient evidence that Joseph "used" a firearm, the court held that "the evidence fits well within the statutory meaning of 'carrying' as defined in our recent decision in *United States v. Evans*, 888 F.2d 891 (D.C.Cir. 1989)." *Joseph*, 892 F.2d at 125–26. Quoting *Evans* to explain the meaning of "carry," the court continued: "When a person 'has a present ability to exercise dominion and control over' a firearm·and further has the firearm 'within easy reach and available to protect him during his ongoing [drug trafficking] offense,' [ ] he has rather plainly committed the act Congress intended to preclude by the passage of the statute." *Id.* at 126 (first brackets in original).

In 1995 the Supreme Court rejected as too broad this circuit's definition of "uses" in the § 924(c)(1) context. We had held that " 'one uses a gun, *i.e.*, avails oneself of a gun, and therefore violates [§ 924(c)(1) ], whenever one puts or keeps the gun in a particular place from which one (or one's agent) can gain access to it if and when needed to facilitate a drug crime.' " *Bailey*, 516 U.S. at 141, 116 S.Ct. 501 (quoting *United States v. Bailey*, 36 F.3d 106, 115 (D.C.Cir.1994) (in banc)). The Supreme Court said, to the contrary, "use" requires "active employment of the firearm." *Id.* at 144, 116 S.Ct. 501.

Like many others before and after him, Joseph responded to the Supreme Court's *Bailey* decision by collaterally attacking his § 924(c)(1) conviction in a 28 U.S.C. § 2255 motion. Joseph argued that, under *Bailey*, his conviction was based on insufficient evidence of "uses or carries" and rested on an improper jury instruction about the meaning of "use." The district court rejected his sufficiency argument by explaining that in a case where two acts are charged in the conjunctive and "where a jury has two or more

bases of conviction, and the evidence on one basis is insufficient, a conviction will nevertheless be upheld if the evidence was sufficient on the alternative basis." *United States v. Joseph*, 939 F.Supp. at 27 & n. 3 (citing *Griffin v. United States*, 502 U.S. 46, 56, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991); *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970)). The district court reasoned that this principle applied to Joseph because *Bailey* only involved the "use" prong of § 924(c)(1) and thus did not undermine this court's prior holding on direct appeal that the evidence was sufficient to sustain Joseph's conviction under a "carry" theory. *See id.* at 28. Nor was the district court persuaded by Joseph's objections to the jury instruction on "use," even though that instruction did not use the Supreme Court's phrase·"active employment of the firearm." The court considered the instruction adequate because it defined "use" by other phrases which the Supreme Court considered the functional equivalent of "active employment"—*i.e.*, "to employ" and "to avail oneself of." *Id.* The court relied on a specific passage from *Bailey* to that effect:

> The word "use" in the statute must be given its "ordinary or natural" meaning, a meaning variously defined as "[t]o convert to one's service," "*to employ*," "*to avail oneself of*," and "to carry out a purpose or action by means of." These various definitions of "use" imply action and implementation.

516 U.S. at 145, 116 S.Ct. 501 (citations omitted; brackets in original; emphases added).

Joseph now appeals the denial by the district court of his § 2255 motion, and raises dual objections to the "carry" charge as well.

## II. DISCUSSION[5]

### A. *Use of the Conjunctive in the Indictment*

■ Joseph claims error in the fact that the indictment used the conjunctive ("used and carried") while the statute uses the disjunctive ("uses or carries"). This is not an error:

---

5. In this section we do not distinguish between arguments raised by Joseph himself in his *pro se* briefs and by the federal public defender on Joseph's behalf.

The appellant contends that ... where legislative definition of a crime sets forth disjunctively a number of acts, the commission of any one of which will be a violation of the statute, the prosecution may in a single count of an indictment or information charge several or all of such acts in the conjunctive and under such charge make proof of any one or more of the acts, proof of one alone, however, being sufficient to support a conviction. This is correct....

*District of Columbia v. Hunt,* 163 F.2d 833, 837–38 (D.C.Cir.1947) (citing *Crain v. United States,* 162 U.S. 625, 16 S.Ct. 952, 40 L.Ed. 1097 (1896)). This rule applies to § 924(c)(1) indictments drafted in the conjunctive, which can support a conviction if the jury is charged and the violation is proved disjunctively. *See United States v. Dickey,* 102 F.3d 157, 164 n. 8 (5th Cir.1996). Using the conjunctive in the indictment protects the defendant's right to be informed of the charge(s) he faces:

> Frequently a statute will specify various ways in which a particular crime may be committed. It is enough to allege one of these ways without negativing the others. Or the pleading may allege commission of the offense by all the acts mentioned if it uses the conjunctive "and" where the statute uses the disjunctive "or." But if the indictment or information alleges the several acts in the disjunctive it fails to inform the defendant which of the acts he is charged with having committed, and it is insufficient.

1 Charles A. Wright, *Federal Practice and Procedure* § 125, at 563–65 (1999) (footnotes omitted).

**6.** For simplicity we refer herein to our circuit's previous definitions of "carry" as the *"Evans* definition," recognizing that other cases have employed variations on the *Evans* language.

**7.** This argument was not raised at trial, on direct appeal, or before the district court on the § 2255 motion because *Muscarello* was decided by the Supreme Court after the district court ruled on the § 2255 motion. The government argues that Joseph has procedurally defaulted this claim by not raising it earlier and that he must therefore demonstrate "cause and prejudice" or "actual innocence." Joseph asks us to apply the much

## B. The "Use" Jury Instruction

We agree with the district court's rejection of Joseph's argument that the "use" instruction was flawed. The jury instruction did not need to use the specific phrase "active employment." Rather, it only needed to convey the meaning of that phrase to assure that a conviction would satisfy *Bailey.* We easily find that the instruction here did so by using two other phrases from the dictionary meaning of "use" that the Supreme Court itself cited as conveying its correct meaning. *See Bailey,* 516 U.S. at 145, 116 S.Ct. 501.

## C. The "Carry" Jury Instruction

Joseph's objection to the "carry" instruction demands more attention. As this court's discussion of *Evans* in Joseph's direct appeal demonstrates, our circuit law has previously defined "carry" by focusing on present access and control. *See supra* p. 5; *see also United States v. Toms,* 136 F.3d 176, 181 (D.C.Cir.1998) ("the weapon must be convenient of access and within reach"); *United States v. Anderson,* 881 F.2d 1128, 1141 (D.C.Cir.1989) (challenge to the same "carry" definition as given at Joseph's trial "almost frivolous" under plain error standard).[6] Joseph argues that *Muscarello v. United States,* 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998), added a further restriction on the meaning of "carry," requiring that a gun be physically "conveyed" by the defendant.[7]

In *Muscarello,* the Court upheld "carry" convictions against a defendant who kept a gun in his locked glove compartment as he drove to a drug sale and two defendants who stored guns in the trunk of the car they rode

laxer harmless error standard under the supervening-decision doctrine.

In *United States v. Perkins,* 161 F.3d 66 (D.C.Cir.1998), the court examined procedural default issues in the § 924(c)(1) context in great detail, but ultimately found it unnecessary to resolve them. We do likewise. Even under the standard Joseph requests and which is most favorable to him—harmless error—the conviction survives. *See id.* at 74. Harmless error review of a jury instruction cannot cause a reversal in the absence of error and, as we explain, *Muscarello* does not render the "carry" instruction improper.

in to a drug sale. *See Muscarello*, 118 S.Ct. at 1914. The Court recognized that "the word 'carry' has many different meanings." *Id.*; *see also id.* at 1915 (referring to the twenty-sixth definition of "carry" in the Oxford English Dictionary). Its holding, hence, was confined to determining that the word's "primary" meaning, involving conveyance and moving, created a proper basis for a conviction under § 924(c)(1). That meaning, it held, was satisfied by placing firearms in an inaccessible part of a car which the defendants drove or rode in.

Given the vehicular situation it was addressing, it is not surprising that the *Muscarello* opinion repeatedly emphasized the centrality of the concept of conveyance to its decision. Indeed, it was only the fact that the inaccessible guns had been hidden in a moving vehicle that gave credence to its conclusion that the defendants were "carrying" them. From this emphasis, however, Joseph would have us conclude that proof of personal conveyance is a necessary element of any conviction under the statute's "carry" prong. But the Court never suggested that the meaning it applied in *Muscarello* is the only one that Congress intended to reach by making "carry" a part of the statute. To the contrary, *Muscarello* explains that "a gangster might 'carry' a gun (in colloquial language, he might 'pack a gun') even though he does not move from his chair." *Id.* at 1915–16. The statute would be satisfied in this non-conveyance scenario because of an alternative "meaning that suggests support rather than movement or transportation. . . ." *Id.* at 1915.

Our *Evans* definition of "carry" is satisfied by proof of dominion and control and ready accessibility to a gun during a drug crime. That definition may vary in some aspects from the support-based definition cited in *Muscarello*, but again *Muscarello* does not state that its "support" example is the only legitimate variation from personal or vehicular "conveyance" that satisfies the statute. Language in *Muscarello* is cited by Joseph for the proposition that either physical possession or conveyance in a vehicle is a prerequisite to "carrying":

The question before us is whether the phrase "carries a firearm" is limited to the carrying of firearms on the person. We hold that it is not so limited. Rather, it also applies to a person who knowingly possesses and conveys firearms in a vehicle, including in the locked glove compartment or trunk of a car, which the person accompanies.

*Id.* at 1913–14. We think the better contextual reading of this passage is that the Court was simply setting up a contrast between a circumstance that everyone would agree amounts to "carrying" and the facts of the *Muscarello* case in order to illuminate the precise issue it was confronting. Thus, what *Muscarello* tells us is that conveyance-based and support-based definitions are proper under the statute, but it certainly does not tell us that all other definitions—such as the *Evans* formula—are improper, especially as applied to the facts of this case. We note especially the Court's endorsement of the term's application to the placement of the gun in a location which allows the person to "accompany" it in its journey. If, as here, the gun is in a tote bag rather than a glove compartment but the defendant "accompanies" it nonetheless and maintains dominion over and access to it, surely the Court's concept of "carrying" is satisfied.

Moreover, there are other indications in *Muscarello* that the *Evans* definition would meet the Court's approval. The Court looked to the purpose of including "carry" in the statute, explaining that Congress sought to "combat the 'dangerous combination' of 'drugs and guns,'" *id.* at 1916 (quoting *Smith v. United States*, 508 U.S. 223, 240, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993)), and to "persuad[e] a criminal to leave his gun at home." *Id.* From these perspectives, surely Congress would want to reach those whose employment of firearms satisfies the "carry" definition given at Joseph's trial ("to bear on or about one's person, or to be convenient of access or within reach"). Employing *Muscarello*'s phrasing, "[i]t is difficult to say that, considered as a class," such people "are less dangerous, or less deserving of punishment, than those who carry handguns on their person." *Id.* at 1916–17. The Court also stated

that " '[c]arry' implies personal agency and some degree of possession...." *Id.* at 1917. Our *Evans* definition meets these requirements.

■ We conclude that the only change in the definition of "carry" in our circuit worked by *Muscarello* is an expansion. When a firearm is not "carried" under the still valid *Evans* definition, a conviction may now be obtained if the defendant conveys the firearm by car within the meaning of *Muscarello*.

Joseph argues less strenuously that, even if the jury instruction in his case does not conflict with *Muscarello* for lack of a personal or vehicular conveyance requirement, the instruction still allowed an unlawful conviction for what the Supreme Court called "transporting" a firearm. In defining "transport," the Court explained that it "implies the movement of goods in bulk over great distances," pointing to the use of a parcel delivery service as an example. *See id.* In that example, the Court noted that only the truck driver "has 'carried' the package in the sense of 'carry' that we believe Congress intended." *Id.* The Court also distinguished the two terms "carry" and "transport" by noting that " '[c]arry' implies personal agency and some degree of possession, whereas 'transport' does not have such a limited connotation...." *Id.* Given the trial court instruction's emphasis on access in defining "carrying," no conviction based on "transporting" would have been allowed.

We therefore hold that the "carry" instruction in Joseph's trial was proper. Because there was no error, the conviction survives this challenge.

### D. *Sufficiency of the Evidence*

■ In an argument closely related to the "carry" jury instruction claim, Joseph contends that the evidence was insufficient for a § 924(c)(1) conviction on either a "use" or "carry" charge. On direct appeal, we said that "[o]n an indictment charged in the conjunctive, when there is evidence sufficient to support conviction on one of the acts charged, the conviction will not be disturbed for lack of sufficiency of the evidence." *Joseph*, 892 F.2d at 125.[8] We reviewed the evidence, concluded that it was sufficient under the *Evans* definition of "carry,"[9] and said that whether it was sufficient under the "use" prong was therefore irrelevant. *See id.* at 125–26. That decision dooms Joseph's claim of insufficiency here. Had our understanding of "carry" at the time of the appeal proved too expansive under *Muscarello*, as Joseph argues, we would have had to revisit the sufficiency question and give careful scrutiny to Joseph's claim. But we are satisfied the *Evans* definition remains good law. Thus, since *Bailey* addressed the "use" prong only, and *Muscarello* does not invalidate our view of "carry," the conclusion reached in Joseph's direct appeal in 1989 that there was sufficient evidence of "carrying" remains sound.

### III. Conclusion

Because Joseph has highlighted no errors in his trial and conviction, the denial of his 28 U.S.C. § 2255 motion is affirmed.

*So ordered.*

---

8. We relied for this proposition on *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970). *Turner* closely paralleled this case in that it involved a narcotic statute phrased in the disjunctive ("to purchase, sell, dispense, or distribute....") and an indictment substituting "and" for the statutory "or." *See id.* at 402 & n. 2, 90 S.Ct. 642. The Court explained that "[t]he general rule is that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Id.* at 420, 90 S.Ct. 642.

9. We reached this conclusion because the jury convicted Joseph on the firearm possession count (plainly on a constructive or joint possession theory), he "was at all relevant times within a few steps of, and usually no more than an arm's span from, the firearm," and the possession convictions supported the conclusion that he "carried" the gun knowingly and in relation to the drug trafficking crime. *Joseph*, 892 F.2d at 125–26.