**UNITED STATES of America,
Appellee,**

v.

**Michael JOHNSON, Appellant.**

No. 99–3045.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 17, 2000.

Decided July 14, 2000.

Sandra G. Roland, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was A. J. Kramer, Federal Public Defender. Neil H. Jaffee, Assistant Federal Public Defender, entered an appearance.

Amul R. Thapar, Assistant United States Attorney, argued the cause for appellee. With him on the brief were Wilma A. Lewis, U.S. Attorney, John R. Fisher, Mary-Patrice Brown, and Ronald L. Walutes, Assistant U.S. Attorneys.

Before: SENTELLE, TATEL, and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

In 1991, defendant Michael Johnson was convicted of violating 18 U.S.C. § 924(c)(1), which imposes a prison term on any person who "uses or carries" a firearm "during and in relation to" a drug trafficking crime. Johnson argues that his conviction must be vacated in light of the Supreme Court's subsequent decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which clarified the meaning of "uses" under that statute. We conclude that the evidence was sufficient to sustain Johnson's conviction, and that the district court's erroneous, pre-*Bailey* instruction constituted harmless error.

I

On February 22, 1991, District of Columbia police officers arrived at Johnson's apartment building with a warrant authorizing them to search his apartment for evidence of drug trafficking. As Officer James Flynn approached the door, defendant emerged from his apartment with a .380 semiautomatic pistol in his right hand. Flynn identified himself as a police officer. In response, Johnson raised his gun, pointed it directly at the officer, slowly retreated back into his apartment, and slammed the door.

Within minutes, the police broke down the door to Johnson's apartment. As they entered, they heard someone running through the apartment and then heard

loud "crashing sounds." Although the officers did not find Johnson, they did find an air shaft that was accessible through a window in his bathroom. Hanging on a nail in the air shaft was a plastic bag containing several small packets of crack cocaine and a loaded .357 revolver with an obliterated serial number. The officers then detected "something down in the bottom of the shaft moving around," and immediately called for a canine unit. Upon placing the call, the officers began hearing "loud smashing noises coming from the shaft."

A few minutes later, a resident of one of the building's basement apartments informed the police that he had an intruder. The officers entered the man's apartment and found Johnson in a child's bedroom, lying on the child's bed. Defendant was clad only in his underwear. On the bed were the same clothes Johnson had worn when he pointed the gun at Officer Flynn, and in the clothes were over thirty packets of crack cocaine and $700 in cash. The ceiling of the dining room adjacent to the child's bedroom had been "completely smashed out." Officer Flynn testified at trial that "[t]here was plaster all over the floor" of the dining room and "a large hole in the ceiling" leading up into the air shaft. The police found a .380 semiautomatic pistol—the same one Johnson had pointed at Officer Flynn—resting on the lip of the hole in the ceiling.

Johnson was charged with four felonies: possessing with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1); using or carrying a firearm—both the .380 semiautomatic pistol and the .357 revolver—during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1); receiving in interstate commerce a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k); and assaulting a police officer with a deadly or dangerous weapon—specifically, the .380 semiautomatic—in violation of D.C.Code § 22–505(b). At trial, Johnson claimed that he had been sleeping in his bed when the police broke down his bedroom door, woke him up, and hit him on the head with a piece of wood. He testified that he did not own any guns, had nothing to do with illegal drugs, and had not known about the air shaft until the trial.

The district court instructed the jury that to establish a violation of 18 U.S.C. § 924(c)(1), the government was required to prove beyond a reasonable doubt: (1) "That the defendant knowingly and intentionally carried or used a firearm"; and (2) "That the defendant did so during and in relation to a drug trafficking crime." Tr. at 342. Consistent with the then-prevailing law of the circuit, the court defined the first element of the offense as follows:

> In order to prove the first element of this offense, the government must prove the defendant carried or used a firearm. The government does not have to show that the defendant bore the firearm on his person, or actively employed the firearm in any manner. To satisfy this first element of the offense, it is sufficient if you find that at a given time the defendant had both the power and the intention to exercise dominion and control over the firearm.

*Id.*; *see, e.g., United States v. Harrison,* 931 F.2d 65, 71 (D.C.Cir.1991) (holding that actual or constructive possession satisfies the "uses or carries" requirement of section 924(c)(1)). Because Johnson was charged with using or carrying both the semiautomatic and the revolver, the jury instruction did not distinguish between the two weapons. Johnson raised no objection.

On May 31, 1991, Johnson was convicted on all counts. He appealed on a number of grounds, but again did not question the validity of the section 924(c)(1) instruction. This court affirmed the convictions. *See United States v. Johnson,* No. 91–3227, 1993 WL 390062 (D.C.Cir. Sept.30, 1993).

Two years later, the Supreme Court held in *Bailey v. United States* that mere possession is insufficient to establish "use" of a firearm under section 924(c)(1), and that the government must instead prove the defendant's "active employment" of the

weapon. 516 U.S. 137, 150, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). On April 22, 1996, Johnson filed a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. The district court denied the section 2255 motion, but granted Johnson's request for a certificate of appealability under 28 U.S.C. § 2253(c)(1)(B).

## II

On appeal, Johnson argues that the evidence at his trial was insufficient to support a conviction for violating section 924(c)(1), and that even if the evidence was sufficient, the jury instructions were erroneous under *Bailey*. We consider each contention below.

### A

■■■ Evidence is sufficient to sustain a conviction if, "viewing the evidence in the light most favorable to the government, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Teffera*, 985 F.2d 1082, 1085 (D.C.Cir.1993) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).[1] The government concedes that, after *Bailey*, the evidence was insufficient to establish using or carrying with respect to the .357 revolver, which was found in a bag hanging on a nail at the top of the air shaft. *See* Gov't Opp'n to Mot. to Vacate at 4. Defendant, however, was charged with using or carrying both the revolver and the semiautomatic. *See* Indictment, Count 2. When a defendant is charged on the basis of multiple acts, a verdict cannot be overturned on the ground that the evidence is insufficient as to one of them. *See Griffin v. United States*, 502 U.S. 46, 56–57, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) ("[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive ... the verdict stands if the evidence is sufficient with respect to any one of the acts charged.") (quoting *Turner v. United States*, 396 U.S. 398, 420, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970)).[2]

■■■ Here, there is no question that the evidence was sufficient to support a conviction for using or carrying the .380 semiautomatic, as Officer Flynn testified that Johnson held it in his hand and pointed it at him. *See Muscarello v. United States*, 524 U.S. 125, 130, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998) ("No one doubts that one who bears arms on his person 'carries a weapon.'"); *Bailey*, 516 U.S. at 148, 116 S.Ct. 501 ("The active-employment understanding of 'use' certainly includes brandishing [or] displaying...."). Indeed, defendant conceded below that there was sufficient evidence to support his conviction with respect to the semiautomatic. *See* Def. Supp. to Mot. to Vacate at 4. Accordingly, we reject defendant's sufficiency challenge.[3]

---

1. Because we find the evidence sufficient to support the conviction, we need not consider whether defendant forfeited this argument by failing to raise it on direct appeal. *See* discussion *infra* Part II.B.

2. Defendant points out that in *Yates v. United States*, the Supreme Court stated that a verdict must "be set aside in cases where the verdict is supportable on one ground but not on another, and it is impossible to tell which ground the jury selected." 354 U.S. 298, 312, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957). In *Griffin*, however, the Court held that *Yates* applies only where the invalid ground involves legal error, not mere evidentiary insufficiency. *See Griffin*, 502 U.S. at 56–59, 112 S.Ct. 466. We also note, as we have before, that an indictment charged in the conjunctive (e.g., one charging that the defendant used a semiautomatic *and* a revolver), may be proven in the disjunctive (i.e., by evidence that the defendant used one *or* the other). *See United States v. Joseph*, 169 F.3d 9, 13 (D.C.Cir. 1999).

3. Although defendant does not raise the point, the evidence was also sufficient to establish that the semiautomatic was used or carried "during and in relation to" a drug trafficking offense. *Cf. infra* Part II.B (noting that defendant does contest the "during and in relation to" element with respect to his claim of instructional error). More than thirty packets of crack cocaine were found in Johnson's clothes, which were lying beside him on the bed. A reasonable jury could readily have concluded that the drugs had been on Johnson's person when he pointed the gun at

## B

■■ Defendant also contends, and the government again concedes, that in light of the Supreme Court's subsequent decision in *Bailey*, the district court erred by conflating the terms "use" and "carry" and instructing the jury that it could convict defendant under section 924(c)(1) if it found he had merely possessed a weapon constructively. *See* Gov't Br. at 22; *see also In re Sealed Case*, 153 F.3d 759, 770–72 (D.C.Cir.1998) (noting that "use" requires "active employment," and that "carry" requires more than "various attenuated forms of constructive possession"); *United States v. Kennedy*, 133 F.3d 53, 58 (D.C.Cir.1998). The remaining question is whether we have authority to correct the error. *See United States v. Olano*, 507 U.S. 725, 727, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *United States v. Perkins*, 161 F.3d 66, 71 (D.C.Cir.1998). "Ordinarily, where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Perkins*, 161 F.3d at 71 (citing *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)) (internal quotations omitted). In this case, however, the government did not assert defendant's procedural default below, and instead argued only that the error was harmless. *See* Gov't Opp'n to Def. Mot. at 3. Johnson contends that this means the government has "waived the waiver"—i.e., that the government has waived the claim of defendant's procedural default. As a conse-

quence, defendant argues, we should not apply the "cause and prejudice" standard. Rather, he urges us to review the case for "harmless error," the standard applicable on direct appeal when a defendant has raised the objection at trial, or for "plain error," the standard applicable on direct appeal when a defendant has not so objected. *See* FED.R.CRIM.P. 52.

In *United States v. Perkins*, we surveyed the different standards of review as well as the ramifications of the government's failure to assert procedural default in the district court. *See Perkins*, 161 F.3d at 71–74. We will not do so again here. Suffice it to say that, as was the case in *Perkins*, we need not resolve the standard of review issue because we conclude that Johnson's conviction must be upheld even if we employ the standard most favorable to him—harmless error. *See id.*; *see also Joseph*, 169 F.3d at 13 n. 7 (finding it unnecessary to determine standard of review because conviction survived harmless error review); *United States v. Toms*, 136 F.3d 176, 180 n. 6 (D.C.Cir.1998) (same).

■ Error is harmless if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[4] Where there has been an error in instructions, we have held such error to be harmless if the jury necessarily found facts that would have satisfied a proper instruction. In *United States v. Winstead*, for example, we found harmless the failure to give any instruction

Officer Flynn, and/or that he had both the gun and drugs with him as he fled down the air shaft.

4. *Chapman* sets the standard for determining, on direct appeal, whether constitutional error was harmless. *Kotteakos v. United States* sets the standard for measuring nonconstitutional harmless error. 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (holding that nonconstitutional error is harmless if it did not have "substantial and injurious effect or influence in determining the jury's verdict"). In

*Brecht v. Abrahamson*, the Supreme Court held that the "less onerous" (from the point of view of the government) standard of *Kotteakos*, rather than that of *Chapman*, is the appropriate standard for determining constitutional harmless error on collateral review. 507 U.S. 619, 623, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *see id.* at 637–38, 113 S.Ct. 1710. Although we may have discretion to do otherwise, we once again give defendant the benefit of the more favorable standard because the government argued only the *Chapman* standard below.

at all on the element of materiality in·a false statements count, because the jury returned a guilty verdict on an overlapping mail fraud count for which it had been instructed on the need to find materiality. 74 F.3d 1313, 1320–21 (D.C.Cir.1996). In *United States v. Kennedy,* a section 924(c)(1) case, we considered an erroneous instruction which, like the one at issue here, "conflated the terms 'use' and 'carry' " and "defined both [too] broadly." 133 F.3d at 58. Because the defendant in that case was also convicted of assault for pointing and firing his gun at police officers, we found that the jury had necessarily "concluded that appellant carried a gun" while committing an offense covered by the statute. *Id.*; *cf. United States v. Smart,* 98 F.3d 1379, 1393 (D.C.Cir.1996) (finding error harmless where, although court improperly defined "using or carrying" as including constructive possession, jury necessarily found "carrying" within meaning of § 924(c)(1) because it also convicted defendant of "carrying a pistol without a license"). And we have repeatedly found harmless error in section 924(c)(1) cases where, although the district court erroneously instructed as to "using," it properly instructed as to "carrying," and the circumstances indicated that the jury necessarily found that carrying had occurred. *See Perkins,* 161 F.3d at 74–75; *Toms,* 136 F.3d at 181; *United States v. Washington,* 106 F.3d 983, 1013 (D.C.Cir. 1997).

Recently, in *Neder v. United States,* the Supreme Court found harmless error where the trial judge instructed the jury that it "need not consider" the materiality of false statements in a tax fraud case, despite the fact that in an intervening case the Court had held materiality to constitute an essential element. 527 U.S. 1, 119 S.Ct. 1827, 1831–32, 144 L.Ed.2d 35 (1999).

The Court made this finding in light of other circumstances and evidence[5]—notwithstanding its conclusion that the omission of a materiality instruction had "preclude[d] the jury from making a finding on the actual element of the offense," *id.* at 10, 119 S.Ct. ·at· 1834, and that the jury could not fairly be said to have "necessarily" found materiality, *id.* at 16 n. 1, 119 S.Ct. at 1837 n. 1. Indeed, the Court held that error can be harmless even if "other facts necessarily found by the jury" are not the "functional equivalent" of the omitted or misdescribed element—even under a broad definition of "functional equivalent." *Id.* at 13, 119 S.Ct. at 1836.

We need not press *Neder* to its limits to decide the case at bar, because here the jury necessarily found that Johnson both used and carried the .380 semiautomatic pistol. As in *Kennedy,* although the using or carrying instruction was erroneous, the jury separately convicted Johnson for assaulting a police officer with the same weapon. *See* Indictment, Count 4; Judgment (Aug. 2, 1991). The only possible basis for that conviction is that the jury found Johnson to have pointed the gun at Officer Flynn—an act that constitutes both "using" and "carrying." *See Muscarello,* 524 U.S. at 131, 118 S.Ct. 1911 (holding that "carry" includes "carrying of weapons directly on the person"); *Bailey,* 516 U.S. at 148, 116 S.Ct. 501 (holding that "using" includes "brandishing"); *Kennedy,* 133 F.3d at 58; *cf. Toms,* 136 F.3d at 181; *Smart,* 98 F.3d at 1392–94.

In his reply brief, defendant argues that even if his conviction on the assault charge means that the jury necessarily found him to have used the semiautomatic, it does not mean that it necessarily found him to have used the gun "during and in relation to" a

---

5. The government had introduced evidence that Neder failed to report over $5 million in income. That, the Court said, "incontrovertibly establishes that Neder's false statements were material to a determination of his income-tax liability. The evidence supporting materiality was so overwhelming, in fact, that Neder did not argue to the jury—and does not argue here—that his false statements of income could be found immaterial." *Neder,* 527 U.S. at 16, 119 S.Ct. at 1837. Because it was "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error," the Court found the error to be harmless. *Id.* at 18, 119 S.Ct. at 1838.

drug trafficking crime. This argument, made for the first time in the last paragraph of Johnson's reply brief, comes too late to be considered. *See, e.g., Grant v. United States Air Force,* 197 F.3d 539, 542 n. 6 (D.C.Cir.1999). But even if the argument were not too late, it would certainly be too little. Johnson was convicted of using or carrying the gun during and in relation to the "drug trafficking crime" charged in the indictment—possessing with intent to distribute the crack cocaine found in his clothing.[6] The only way in which the semiautomatic could have *not* been used or carried in relation to those drugs is if they were not in his clothing at the time he pointed the weapon at the officer, *and* if they somehow traveled down the air shaft and onto the bed separately from the defendant and his gun. *Cf. Smith v. United States,* 508 U.S. 223, 238, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993) ("The phrase 'in relation to' is expansive . . . .").

We decide whether error was harmless based on the evidence at trial, and there was no evidence presented that would support such an implausible scenario. *See Perkins,* 161 F.3d at 75. Nor did defendant make such a claim. His only defense was that he was innocently asleep in bed at the relevant time. The jury plainly rejected that story when it convicted him on all charges, which it did, no doubt, because the bed in which he was "asleep" was the wrong one: it belonged not to him but to the child who lived in the apartment below.

█ Nor does defendant suggest an exculpatory scenario in his appellate briefs. Although his reply brief raises the "in relation to" issue, it suggests no circumstance in which the jury could have found that he used or carried the weapon without also finding that he did so during and in relation to a drug trafficking offense. We have said before that we will not rest a

finding of harm merely on "any hypothetical the defendant can conjure up." *Id.* The scenario offered by defense counsel must be plausible in light of the evidence at trial, not merely theoretically possible. *See id.* (citing *Smart,* 98 F.3d at 1393–94 & n. 22). Where, as here, the defense does not even suggest an exculpatory scenario—plausible or otherwise—we surely will not invent one ourselves.

### III

We conclude that the evidence at Johnson's trial was sufficient to sustain a conviction for violating section 924(c)(1), and that the district court's erroneous jury instruction was harmless. We therefore affirm the denial of defendant's motion to vacate his conviction.

---

**6.** Count 2 of the indictment charged Johnson with using or carrying a firearm during and in relation to the drug trafficking crime charged in Count 1. Count 1 charged Johnson with possessing with intent to distribute five grams or more of cocaine base (crack).

As there was substantially less than five grams of cocaine in the bag found at the top of the shaft, *see* Tr. at 123, 314, and substantially more in his clothing, *see id.* at 22, the jury necessarily found the drugs in Johnson's clothing to be part of the total.