**UNITED STATES of America,
Appellee,**

v.

**William Austin GREEN, Appellant.**

**No. 99–3083.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 10, 2000.

Decided June 26, 2001.

Sandra G. Roland, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was A. J. Kramer, Federal Public Defender.

Mary B. McCord, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney at the time the brief was filed, and John R. Fisher, Mary-Patrice Brown and Robert D. Okun, Assistant U.S. Attorneys.

Before: EDWARDS, Chief Judge, GARLAND, Circuit Judge, and SILBERMAN, Senior Circuit Judge.*

Opinion for the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

William Austin Green was convicted in 1991 for "using or carrying" a firearm during and in relation to a violent crime, in violation of 18 U.S.C. § 924(c)(1). After an unsuccessful direct appeal, Green brought a collateral challenge to his conviction pursuant to 28 U.S.C. § 2255. He contends that in light of *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the trial judge misinstructed the jury as to the meaning of "using or carrying." The district court denied Green's motion to vacate his sentence, concluding that any error was harmless. We agree with the district court and affirm the judgment below.

## I

On October 31, 1990, Green helped Rita Peaks abduct a three-year-old girl from her mother and legal custodian. The kidnapping occurred as mother and child, the latter dressed in her Halloween costume, walked down a street in the District of Columbia. Green approached them from behind, grabbed the child, ran across the street, jumped into Peaks' waiting car, and drove off. Peaks intended to take the child to Arizona to live with her and Carl Butler, the child's father. After a number of intervening events, dramatic but unnecessary to describe here, Green and Peaks persuaded two others, Ernie Davis and Jerome Diggs, to provide a car and accompany them on their trip.

Although Green and Peaks had told Davis and Diggs that their destination was

* Senior Judge Silberman was in regular active    service at the time of oral argument.

Virginia, Peaks instead drove the group, including the kidnapped child, into Maryland. When Davis realized that Peaks planned a longer trip than he had expected, he expressed reservations about continuing on the journey. Davis testified that Peaks stopped the car, and that Green then pointed a gun "in [his] face" and ordered him out. Diggs testified that he also tried to get out of the car, but that Green grabbed him from behind, held a gun to his head, and told Peaks to drive away.

Peaks, Green, Diggs, and the child traveled west until they reached Kansas City, Missouri, where they were stopped by police officers. At the time, Diggs was in the driver's seat and Green in the front passenger's seat. Because Diggs could not produce a license or registration, the officers asked the group to step out of the car. After a brief search, Officer Mark Johnson found a loaded .25 caliber pistol under the center console in the car's front seat. At trial, Officer Johnson testified that Green immediately stated, "that's my gun." Diggs also testified that Green claimed ownership of the weapon, and that the gun seized by the officer appeared to be the same one Green had earlier brandished at him. The officers placed Green under arrest for carrying a concealed weapon, and permitted the others (including the child) to drive off. Following further adventures, again unnecessary to recount, Peaks was arrested in Colorado and the child was returned to her mother.

On January 15, 1991, Green was charged with: kidnapping, in violation of 18 U.S.C. § 1201; conspiracy to kidnap, in violation of 18 U.S.C. § 371; assault with intent to kidnap, in violation of D.C.Code § 22–503; transporting a firearm in interstate commerce while under indictment for a felony, in violation of 18 U.S.C. § 922(n); and using or carrying a firearm during and in

relation to a violent crime, in violation of 18 U.S.C. § 924(c)(1). Green was also charged with tampering with and retaliating against a witness, in violation of 18 U.S.C. §§ 1512(b)(1) and 1513, for asking Davis to lie to the grand jury while the two were in custody and for punching Davis after he testified.

Green, who was tried jointly with Peaks, neither testified nor presented witnesses in his defense. Following closing arguments, the trial court instructed the jury that the first element of the § 924(c)(1) offense was that "the defendant was carrying or used a firearm." 4/19/91 Tr. at 119. In defining "using or carrying," the court advised the jury, inter alia, that: "In order to satisfy this element, . . . . [i]t is sufficient if you find that [the defendant] transported or conveyed a weapon *or had possession of it in the sense that at a given time [he] had both the power and the intention to exercise dominion and control over it.*" *Id.* at 120 (emphasis added).

On April 19, 1991, the jury found Green guilty of all charges. This court affirmed his convictions in 1993. *United States v. Green*, Nos. 91–3200, 92–3005, 1993 WL 119451 (D.C.Cir. Mar. 23, 1993). In 1995, the Supreme Court decided *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), which clarified the meaning of "using" a firearm under § 924(c)(1). *Bailey* held that to prove "use," "the Government must show that the defendant actively employed the firearm during and in relation to the predicate crime." *Id.* at 150, 116 S.Ct. 501. Thus, a conviction for "using" a firearm under § 924(c)(1) "requires more than a showing of mere possession." *Id.* at 144, 116 S.Ct. 501.

Following *Bailey*, Green filed a motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. After holding a hearing, the district court denied Green

relief. The court found that any error in the § 924(c)(1) instruction was harmless, because by convicting Green of unlawfully transporting a firearm in interstate commerce under 18 U.S.C. § 922(n), the jury necessarily concluded that Green had "carried" the firearm as well. *See United States v. Green*, No. 90–cr–553, slip op. at 5–6 (D.D.C. Apr. 28, 1999).

## II

The government concedes that, in light of the Supreme Court's subsequent decision in *Bailey*, the trial court erred by conflating the terms "using" and "carrying" and effectively instructing the jury that it could convict Green if it found he had merely constructively possessed a weapon. *See United States v. Johnson*, 216 F.3d 1162, 1166 (D.C.Cir.2000); *In re Sealed Case*, 153 F.3d 759, 770–72 (D.C.Cir.1998). The government contends, however, that because Green failed to object to the jury instructions either at trial or on direct review, "the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' . . . or that he is 'actually innocent.'" Gov't Br. at 20 (quoting *Bousley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)). Green counters that, among other things, the government waived this procedural default argument by failing to make it with respect to the "carry" instruction in the § 2255 proceeding below. He instead urges us to vacate his conviction unless we find "harmless error," the standard we

apply on direct review when the defendant has objected to the instruction at trial. *See* Fed.R.Crim.P. 52(a).

On several previous occasions we have surveyed the standards of review potentially applicable to *Bailey* trial errors. In each case, we have found it unnecessary to select the most appropriate standard, because in each the defendant's conviction survived the standard most favorable to him—harmless error. *See Johnson*, 216 F.3d at 1166; *United States v. Joseph*, 169 F.3d 9, 13 n. 7 (D.C.Cir.1999); *United States v. Perkins*, 161 F.3d 66, 71–74 (D.C.Cir.1998); *United States v. Toms*, 136 F.3d 176, 180 n. 6 (D.C.Cir.1998). As we discuss in Part III, the same is true here.

Error is harmless if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[1] In numerous cases we have found *Bailey* errors to be harmless where "the jury necessarily found facts that would have satisfied a proper instruction." *Johnson*, 216 F.3d at 1166–67 (collecting cases). And we have often found that to be the case where, although there was instructional error as to the "using or carrying" charge, a conviction on another statutory count assured us that the jury had necessarily found the element as to which the jury had been mischarged. *See id.* Indeed, in both *United States v. Johnson* and *United States v. Kennedy*, we encountered erroneous instructions that, like the one at issue here, conflated the

---

1. *Chapman* establishes the standard for determining whether constitutional error was harmless on direct appeal, whereas *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), provides the standard for nonconstitutional harmless error. The *Chapman* standard is more favorable to a defendant. *See Johnson*, 216 F.3d at 1166 n. 4. Because Green does not merit relief even

under that more favorable standard, we apply *Chapman* without considering which standard is more appropriate in the context of Green's collateral attack on his conviction. *See id.* (noting that *Kotteakos* normally applies on collateral review, but applying *Chapman* where government argued only *Chapman* below).

terms "using" and "carrying" and defined the § 924(c)(1) offense too broadly. *See Johnson,* 216 F.3d at 1166; *United States v. Kennedy,* 133 F.3d 53, 58 (D.C.Cir.1998). In each case, however, we concluded that because the defendant was also convicted of assaulting a police officer with a gun, the jury necessarily concluded that the defendant had "carried" the same gun. *See Johnson,* 216 F.3d at 1167; *Kennedy,* 133 F.3d at 58; *see also United States v. Smart,* 98 F.3d 1379, 1393 (D.C.Cir.1996) (finding harmless error where, although the court improperly defined "using or carrying" as including constructive possession, the jury necessarily found "carrying" within the meaning of § 924(c)(1) because it also convicted the defendant of "carrying a pistol without a license"); *cf. United States v. Winstead,* 74 F.3d 1313, 1320–21 (D.C.Cir.1996) (finding harmless error where the court failed to instruct the jury on the element of materiality in a false statements count, because the jury also found the defendant guilty on an overlapping mail fraud count as to which it had been instructed regarding materiality).

These cases might be characterized as ones in which facts necessarily found by juries in convicting defendants on properly charged counts were the "functional equivalent" of elements that were erroneously described with respect to other counts. But as we noted in *Johnson,* the Supreme Court held in *Neder v. United States,* 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999), that "error can be harmless even if 'other facts necessarily found by the jury' are not the 'functional equivalent' of the omitted or misdescribed element—even under a broad definition of 'functional equivalent.'" *Johnson,* 216 F.3d at 1167 (quoting *Neder,* 527 U.S. at 13, 119 S.Ct. 1827); *see also Neder,* 527 U.S. at 16 n. 1, 119 S.Ct. 1827. The dispositive question is simply whether it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Neder,* 527 U.S. at 18, 119 S.Ct. 1827.

We now turn to an analysis of the facts of this case, in order to determine whether the district court's instructional error was harmless beyond a reasonable doubt.

### III

Although the "using or carrying" instruction in this case was erroneous, the jury convicted Green of another charge that required the jury to find facts that are the "functional equivalent" of "carrying" under § 924(c)(1): unlawfully transporting a gun in interstate commerce in violation of § 922(n). Green correctly notes that "transporting" may at times have a broader meaning than "carrying": for example, "transporting" may include shipping items through the mail. *See Muscarello v. United States,* 524 U.S. 125, 134–36, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998). As the district court explained, however, in this case:

> The only evidence presented to the jury that defendant "shipped or transported" a firearm in interstate commerce was testimony from Ernie Davis and Jerome Diggs that defendant held a firearm in his hand during the interstate journey, and testimony from Officer Mark Johnson of the Kansas City Police Department that defendant proclaimed ownership of a loaded gun that Johnson found "underneath the center console ... in the front seat" of the car where defendant was a passenger.

*Green,* slip op. at 5 (transcript citations omitted). This evidence plainly constitutes "carrying" under § 924(c)(1).

In *Muscarello v. United States,* the Supreme Court held that "carrying" includes both "carrying of firearms on the person" and "knowingly possess[ing] and convey[ing] firearms in a vehicle, including in

the locked glove compartment or trunk of a car, which the person accompanies." 524 U.S. at 126–27, 118 S.Ct. 1911. Because the evidence that Green "transported" the gun during the trip was exclusively evidence that constitutes "carrying" as described in *Muscarello*, we agree with the district court that in finding Green guilty of violating § 922(n), the jury necessarily found facts constituting a violation of § 924(c)(1) as well. This renders any error in the "using or carrying" instruction harmless. *See, e.g., Perkins*, 161 F.3d at 74.

Green contends that there is a scenario under which the jury could properly have convicted him both for "transporting" a firearm under § 922(n), and for "carrying" a firearm under the erroneous § 924(c)(1) charge, but still not have found sufficient evidence for a proper § 924(c)(1) conviction. The jury might have believed, Green claims, that Rita Peaks "conveyed" the gun during the car ride, and that he did not assume constructive possession until after the car was stopped and the police found the gun. Def. Br. at 17. Green appears to contend that under the erroneous "carrying" instruction, the jury could have convicted him for constructively possessing the gun after the officers ordered him out of the car, without finding that he also constructively possessed it in the moving car. Were this the case, the "carrying" conviction would fail *Muscarello*'s requirement that even in a car, a defendant must have "personal agency and some degree of possession." 524 U.S. at 134, 118 S.Ct. 1911. Green appears further to contend that the § 924(c)(1) error is not cured by the "transporting" conviction because the judge assertedly botched the latter instruction as well—by permitting the jury to find Green guilty of "transporting" the gun without having any possessory interest in it at all. Def. Reply Br. at 7 n.2.

Although we do not agree with Green's characterization of the district court's "transporting" instruction,[2] the evidence at trial does not in any event support this thoroughly implausible scenario. First, Green's hypothetical is inconsistent with the testimony of both Officer Johnson and Jerome Diggs that Green claimed ownership of the gun; neither witness testified that Green expressed any caveats regarding when he came to own or possess the weapon. Second, the contention that Green had no possessory interest in the gun until after he stepped out of the car is inconsistent with the testimony of five witnesses, who testified that, during Green's post–abduction travels, they had seen him brandish either *a* gun or the *same* gun the officers later found. Finally, not one witness testified that the gun recovered by Officer Johnson belonged to Peaks or that Green lacked control over it at any time.

The only evidence offered by Green in support of his scenario is Diggs' testimony, contrary to that of Officer Johnson, that Green did not immediately say the gun was his. Diggs testified, instead, that: "[Green] kept saying it didn't belong to him, until he turned around and asked Rita will she bond him out.... She said yeah, and he said it's his gun. Then he turned around to the officer and said that

**2.** Immediately after describing the elements of the § 922(n) "transporting" charge, the court told the jury that "in order to return a guilty verdict against Mr. Green on this count, you must be unanimous that the defendant Green used and carried a particular firearm." 4/19/91 Tr. at 118. Green contends that by making this statement, the court equated "transporting" with "using or carrying," and thereby imported the flaws of the "using or carrying" instruction into the "transporting" charge. To the contrary, the court, at worst, inadvertently added an additional element to the already-stated requirements of the § 922(n) charge.

it's his gun." 4/17/91 Tr. at 139. Green claims that from this testimony, the jury could have inferred that Green did not possess the gun during the car ride, but rather falsely claimed ownership in order to enable Peaks to escape.

This "evidence" does not increase the plausibility of Green's scenario. Nothing on the face of Diggs' rendition supports Green's interpretation of the testimony. Rather, the most straightforward reading is that Green did not want to confess his guilt until he was certain that Peaks would bail him out—not that he falsely confessed in order to save her. Diggs did not himself interpret Green's words as Green suggests; to the contrary, Diggs testified that Green had brandished what appeared to be the same gun earlier in the trip. Hence, to accept this scenario, the jury would have had to disbelieve Diggs' testimony about that earlier incident, and then interpret in a less-than-obvious way Diggs' testimony that Green did not immediately confess his ownership. Moreover, the jury would have had to so reason in the face of uncontradicted evidence that Green did in fact exercise control over the gun during the cross-country trip.[3]

As we have said many times before, it is the evidence before the jury that determines whether a conviction survives harmless error review. *See, e.g., Johnson,* 216 F.3d at 1168; *Perkins,* 161 F.3d at 75; *United States v. Washington,* 106 F.3d 983, 1013 (D.C.Cir.1997); *Smart,* 98 F.3d at 1393–94 & n. 22. We will not find an error harmful based merely on "any hypothetical the defendant can conjure up."

*Johnson,* 216 F.3d at 1168 (quoting *Perkins,* 161 F.3d at 75). Rather, the "scenario offered by defense counsel must be plausible in light of the evidence at trial, not merely theoretically possible." *Johnson,* 216 F.3d at 1168. Green's scenario is simply not plausible, and thus does not undermine our conclusion that the error in his jury instruction was harmless beyond a reasonable doubt.

## IV

Although the "using or carrying" instruction at Green's trial was erroneous in light of the Supreme Court's subsequent decision in *Bailey,* we conclude that the error was harmless. Accordingly, we affirm the judgment of the district court.

---

**3.** A further flaw in Green's scenario is that if the jury truly believed that Green did not possess the gun during the trip, but only falsely claimed ownership after the police found it, the jury would not have convicted him of "carrying" even under the trial court's erroneous instruction. The court instructed the jury that to convict, it would have to find that Green had "both the power and the intention to exercise dominion and control over" the weapon. 4/19/91 Tr. at 119. At the time Green made his claim to ownership, the gun was in the hands of Officer Johnson. Hence, whatever Green's intention, he plainly no longer had the "power" to exercise dominion and control.